John PSIMENOS, Plaintiff,

v.

E.F. HUTTON & COMPANY, INC., Defendant.

No. 82 Civ. 6348 (CBM).

United States District Court, S.D. New York.

Feb. 1, 1983.

Kieffer & Hahn by Michael C. Devine, New York City, for plaintiff.

Cahill Gordon & Reindel by Thomas F. Curnin, Thomas J. Kavaler, Joel E. Davidson, New York City, for defendant.

## OPINION

MOTLEY, Chief Judge.

Plaintiff John Psimenos, a Greek resident, seeks damages for claims allegedly arising under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (1982) as well as for pendent claims under common law contract and agency principles against the defendant E.F. Hutton & Company, Inc. (Hutton), a Delaware corporation maintaining its principal place of business in New York City. Defendant originally moved to dismiss plaintiff's complaint on various grounds. By stipulation dated January 6, 1983, the parties agreed to submit before the court on the instant motion the "fundamentally preliminary"[1] challenge to the court's subject matter jurisdiction because the federal commodities causes of action allege predominantly foreign transactions. Also before the court is Hutton's motion to dismiss on the ground that plaintiff's other alleged basis of federal jurisdiction, diversity of citizenship, is improperly pleaded. For the reasons set forth below, the claims allegedly arising under the Commodities Exchange Act are dismissed with prejudice. Plaintiff's other jurisdictional claim, diversity of citizenship, is also dismissed but without prejudice to file a motion for leave to replead this court's diversity jurisdiction.

Plaintiff claims that in 1975 he opened a commodities trading account with defendant (Amended Complaint ¶ 16(c)). At that time Psimenos was informed by Mathieu Mavridoglou, Hutton's agent and employee in Athens, that his account would be managed in accordance with the defendant's standard procedures and with rules and regulations of the Commodities Futures Trading Commission. Mavridoglou, however, failed to inform Psimenos of the highly speculative, unresearched, and leveraged nature of the transactions placed in Psimenos' account (Amended Complaint ¶¶ 16(d), 37(b)–(d)). In 1977, Hutton persuaded Psimenos to have his account handled in Paris (Amended Complaint ¶ 16(a)). At that time Psimenos was advised in conversations with Mavridoglou in Athens and in conversations with Mavridoglou and a Mr. Tome in Geneva that a Hutton representative in Paris would help Psimenos recoup his prior losses (Amended Complaint 16(a)). In 1981, the account was transferred to Athens; at that time Mavridoglou advised Psimenos that a new Hutton representative, Marios Michaelides, would handle his account (Amended Complaint ¶ 16(e)). Mavridoglou informed Psimenos that in managing his account, Michaelides would invest only in futures contracts in United States Treasury Bills which involve low risk and large profit potential (Amended Complaint ¶ 16(e)).

The gravamen of the fraud is that each of the transactions in 1975, 1977, and 1981

---

1. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979).

involved misrepresentations by Hutton employees because Hutton did not have professional managers monitoring his account as promised and did not continually evaluate the performance of its managers as promised (Amended Complaint ¶ 17). The 1981 transaction involved the additional fraudulent statement by Mavridoglou that Michaelides was a Hutton employee when, in fact, Michaelides was neither an employee nor an agent of Hutton. In addition, although Hutton represented that its investments were sound and profitable, they were, in reality, highly speculative, unresearched, and risky (*id.*). As a result of these misrepresentations plaintiff claims that he suffered investment losses in excess of $200,000.

Counts One through Three of plaintiff's complaint state claims allegedly arising under the Commodities Exchange Act. Counts Four through Seven allege claims sounding in common law contract and agency principles.

*Discussion*

### A. Subject Matter Jurisdiction Over the Federal Claims

The question of subject matter jurisdiction in cases involving the applicability of federal law to foreign transactions is governed by the following general principles:

> When, as here, a court is confronted with transactions that on any view are predominantly foreign, it must seek to determine whether Congress would have wished the precious resources of United States courts and law enforcement agencies to be devoted to them rather than leave the problem to foreign countries.

*Fidenas AG v. Compagnie Internationale Pour L'Informatique CII Honeywell Bull S.A.,* 606 F.2d 5, 9 (2d Cir.1979) (*quoting Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 985 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975)). In *ITT v. Vencap, Ltd.,* 519 F.2d 1001 (2d Cir.1975), Judge Friendly stated:

> Our ruling on this basis of jurisdiction is limited to the perpetration of fraudulent acts themselves and does not extend to

mere preparatory activities or the failure to prevent fraudulent acts where the bulk of the activity was performed in foreign countries.

*Id.* at 1018. Under these principles governing this court's subject matter jurisdiction, the relevant issue becomes "whether the fraud alleged has sufficient contacts with the United States to invoke the federal securities and commodities laws or whether it is 'predominantly foreign' in nature." *Mormels v. Girofinance, S.A.,* 544 F.Supp. 815, 817 (S.D.N.Y.1982) (Weinfeld, J.).

In *Mormels,* the plaintiffs alleged that they opened a commodity trading account with defendant Girofinance S.A. ("Girofinance"), a Costa Rican corporation, in reliance upon misrepresentations made by Girofinance that, *inter alia,* it was the agent of defendant Hutton. Plaintiffs claimed that on or about November 1979, Girofinance converted their funds and fled Costa Rica with such funds. Plaintiffs alleged violations of various federal securities laws and violations of the Commodities Exchange Act. In deciding that the federal securities and commodities laws did not confer subject matter jurisdiction over these foreign acts, Judge Weinfeld reasoned:

> The site of all basic activities which are at the core of plaintiffs' claims was Costa Rica. The alleged false representations were made there by Girofinance; the monies of which plaintiffs claim they were defrauded by reason of such representations were delivered by them to Girofinance in Costa Rica where the accounts were opened and maintained. Each plaintiff at the time of the complained of conduct was a resident of Costa Rica. Girofinance, the broker who allegedly converted plaintiffs' funds, did so there. Thus the primary fraud and every fact essential to plaintiffs' charge of fraudulent conduct was committed or occurred in Costa Rica.

544 F.Supp. at 817 (footnote omitted).

In this case, the sites of the fraudulent activity were clearly all foreign. The alleged 1975 misrepresentations occurred in Athens; the 1977 fraud occurred in Paris,

Athens, and Geneva; the 1981 fraud occurred in Athens. Indeed, there are only two allegations of activities which occurred in the United States (*see* Complaint ¶¶ 4, 13). In attempting to establish a nexus with the United States, plaintiff alleges that "certain of the purchases and sales in plaintiff's account were made on, and through the facilities of, commodities futures contract markets located in the County of New York, and by use of telephone and mail communications into and out of the County of New York" (Amended Complaint ¶ 4).

This allegation does not alter this court's ruling that the basic sites of all fraudulent activity are foreign. As Judge Friendly has stated, "Our ruling on this basis of jurisdiction is limited to the perpetration of *fraudulent acts themselves* and does not extend to mere preparatory activities ..." *ITT v. Vencap, Ltd.,* 519 F.2d at 1018 (emphasis added). It is clear that Judge Friendly conceives the relevant inquiry to be one which focuses on activity which is fraudulent in nature and does not extend to trading activities which are in themselves nonculpable but part of ordinary, quotidian business practice. Here, plaintiff has made no claim that these trading activities were in any way fraudulent or even in preparation of fraudulent activity.

■ The only other allegation which might, indulging all inferences in plaintiff's favor, describe fraudulent activity in this country is contained in ¶ 13 of the Complaint. These allegations, however, do not cure the deficiencies of plaintiff's complaint. First, the court notes that these allegations are vague and conclusory, attempting, it appears, to obscure the identity of the defendants and the location of the fraudulent acts. As such, these allegations fail to satisfy the requirements of Fed.R. Civ.P. 9(b) as to particularity in alleging the circumstances of fraud or even the ordinary rules of notice pleading, and thus cannot confer subject matter jurisdiction under the federal commodities laws. *See Fidenas A G,* 606 F.2d at 8 (citing district court opinion for view that conclusory allegations un-

der Fed.R.Civ.P. 9(b) do not suffice to demonstrate that fraudulent acts occurred in United States). Moreover, even if these allegations can be cured of their pleading deficiencies, they allege tertiary or secondary activities at best with respect to the fraud in question.

In this case, plaintiff's allegations indicate that the main culprit in this case is Mavridoglou, the Hutton agent in Athens. It was Mavridoglou who allegedly misinformed Psimenos of the quality of the investments in plaintiff's account and of the managerial services with respect to the account when Psimenos first opened that account in 1975. Again it was Mavridoglou who in 1977 falsely informed Psimenos that transferring his account to Paris to be managed under the services of a French Hutton agent would reverse his misfortunes. Finally, Mavridoglou gave Psimenos false confidence in the investment profitability of United States Treasury bonds. It is clear, then, that the essence of the fraud is Mavridoglou's alleged deceptions. Thus, even assuming that these allegations are not deficient under pleading requirements, the activities described in New York are "relatively minor" and are "secondary and ancillary," *Fidenas A G,* 606 F.2d at 8 (quoting from uncited district court opinion), in comparison to the core of the alleged fraud which was committed by Mavridoglou in foreign lands.

Plaintiff attempts to argue that this case is factually distinguishable from *Mormels* because here the plaintiff dealt directly with a Hutton employee overseas. In *Mormels,* on the other hand, the defendant Girofinance allegedly misrepresented itself as a Hutton agent but was in fact not connected in any capacity with Hutton. In that case, the wrongdoer held itself out as an agent of Hutton and Hutton allegedly became liable because of its culpable nonfeasance in allowing plaintiff to continue to believe that the wrongdoer was actually a Hutton agent. Under Psimenos' view, the pleadings in *Mormels* disclosed a foreign culprit acting in a foreign land with absolutely no genuine ties to an American com-

pany; Hutton's only alleged basis of liability in *Mormels* was its culpable nonfeasance in failing to disclaim any connection with the foreign culprit. In contrast, the pleadings in this case, according to plaintiff, describe an overseas employee of an American company who actively created the deception.

The court first notes that plaintiff's attempt to distinguish this case from *Mormels* is not entirely successful. *Mormels* did involve some activity by a Hutton employee overseas. In *Mormels,* the pleadings allege that a Hutton employee, Greenman, made false representations in a meeting with plaintiff in Hutton's New York offices, and then travelled to Costa Rica where Greenman's conduct "had the effect of 'lulling the plaintiffs into believing and further reinforcing [their] beliefs that Girofinance S.A. was an agent of E.F. Hutton.'" 544 F.Supp. at 818. That overseas activity by Greenman did not alter Judge Weinfeld's view that the court did not have subject matter jurisdiction. More importantly, even assuming arguendo that plaintiff is correct that *Mormels* involved a foreign culprit whereas this case involves a culpable American employee overseas, it is a distinction without legal significance.

As defendant correctly argues, *Mormels* does not establish the principles governing the application of the federal securities and commodities laws to overseas transactions. Instead, *Mormels* is a particular application of principles established by the Second Circuit in a number of decisions. These principles were summarized in *Bersch v. Drexel Firestone, Inc., supra.* In *Bersch,* Judge Friendly stated that the anti-fraud provisions of the federal securities [2] laws:

(1) Apply to losses from sales of securities to Americans resident in the United States whether or not acts (or culpable failures to act) of material importance occurred in this country; and

(2) Apply to losses from sales of securities to Americans resident abroad if, but only if, acts (or culpable failures to act) of material importance in the United States have significantly contributed thereto; but

(3) Do not apply to losses from sales of securities to foreigners outside the United States unless acts (or culpable failures to act) within the United States directly caused such losses.

518 F.2d at 993. *Mormels.* is actually an application of the third category above. In *Mormels,* all but one of the plaintiffs were foreign citizens and that plaintiff was an American residing in Costa Rica. In deciding that the issue was "whether the fraud alleged has sufficient contacts with the United States to invoke the federal securities and commodity laws or whether it is 'predominantly foreign' in nature," 544 F.Supp. at 817, Judge Weinfeld was attempting to determine whether the court had jurisdiction under the third category. Thus, if the fraud had had "sufficient contacts with the United States," that case would have fallen within the third category's application to commodities fraud suffered by foreigners because of a culpable act within the United States. In deciding that the fraudulent acts did not have sufficient contacts with the United States, Judge Weinfeld thus concluded that this was not a case where "acts (or culpable failures to act) within the United States directly caused such losses," and that, therefore, the court did not have subject matter jurisdiction. Since neither the first nor the second category was even arguably applicable in *Mormels,* the court concluded that it had no subject matter jurisdiction.

---

2. In *Mormels v. Girofinance, S.A.,* 544 F.Supp. 815 (S.D.N.Y.1982), Judge Weinfeld ruled:

> The parties are in agreement that the principles developed in these cases [*Bersch v. Drexel Firestone, Inc.* and *ITT v. Vencap*] are applicable to the commodity fraud claim. Securities cases and principles are used as persuasive aids to interpretation of the CEA.

*Id.* at 817 n. 8 (citations omitted). This court agrees that Judge Friendly's discussion of the subject matter jurisdiction of the federal securities laws applies as well to the commodities laws.

This explication of the relationship between *Mormels* and the general principles set forth by Judge Friendly in *Bersch* indicates why plaintiff's attempted distinction between the instant case and *Mormels* is misconceived from the point of view of the applicable jurisdictional principles. The attempt to demonstrate that this case differs from a case in which subject matter jurisdiction was *not* found is irrelevant to the present inquiry unless plaintiff can demonstrate how these differences are significant under the applicable categories governing this court's subject matter jurisdiction. Under Judge Friendly's version of the jurisdictional principles, the presence of the Hutton agent abroad has no legal significance. This case might be different if, for instance, the Hutton agent abroad engaged in fraud under direct instructions from a Hutton domestic office. Under such circumstances, this case might well fall within the third category above, *i.e.* where a foreigner incurs a loss which is directly caused by acts within the United States. In the instant case, however, that Hutton had an agent abroad is a difference between this case and *Mormels* which has no legal significance and cannot alter this court's view that it lacks subject matter jurisdiction of this dispute.

So far this court has considered allegations which attempt to shift the locus of the alleged fraud to this country and within the reach of the federal commodities laws. In addition, plaintiff claims that Hutton's acts "involved, affected, and had an impact upon interstate commerce" (Amended Complaint ¶ 4). As opposed to the argument that the bulk of the fraud occurred in this country, this argument seeks to bring this case within Judge Friendly's first category of subject matter jurisdiction under the federal securities and commodities laws. That first category was first enunciated and explained by the Second Circuit in *Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir.), *aff'd in relevant part*, 405 F.2d 215, 217 (2d Cir.) (en banc), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). In that case, the Second Circuit ruled:

We believe that Congress intended the Exchange Act to have extraterritorial application in order to protect domestic investors who have purchased foreign securities on American exchanges and to protect the domestic securities market from effects of improper foreign transactions in American securities.

\* \* \* \* \* \*

Similarly, the anti-fraud provision of § 10(b), which enables the Commission to prescribe rules "necessary or appropriate in the public interest or for the protection of investors" reaches beyond the territorial limits of the United States and applies when a violation of the Rules is injurious to United States investors. "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the actor] had been present at the [time of the detrimental] effect, if the state should succeed in getting him within its power." *Id.* at 206 *quoting Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). Under the principles in *Schoenbaum* and summarized by Judge Friendly in *Bersch,* even if an act is concededly committed in a foreign land, the federal securities and commodities laws do apply to such acts when necessary to protect American investors. Plaintiff's argument that his case falls within this jurisdictional category is to be distinguished from his earlier argument in which he attempted to shift the locus of the alleged fraud.

Once having distinguished between these two arguments, the court believes that both arguments must fail. The *Schoenbaum* jurisdictional category is triggered *only* when the interests of American investors are threatened. As Judge Friendly further explained, the scope of this category has clear limits:

This means to us that there is subject matter jurisdiction of fraudulent acts relating to securities which are committed abroad only when these result in injury to purchasers or sellers of those securities in whom the United States has an interest,

not where acts simply have an adverse affect [sic] on the American economy or American investors generally.

*Bersch v. Drexel Firestone, Inc.,* 519 F.2d at 989. Here, the complaint alleges only an effect on interstate commerce generally, and not even that the acts in question have "an adverse affect [sic] on the American economy or American investors generally," *id.* Furthermore, Psimenos cannot contend that he falls within that class of purchaser "in whom the United States has an interest," *id.* First, as *Schoenbaum* indicates, federal securities law "reaches beyond the territorial limits of the United States and applies when a violation of the Rules is injurious to United States investors," 405 F.2d at 206. This court believes that these United States investors are those "in whom the United States has an interest," *Bersch v. Drexel Firestone, Inc.,* 519 F.2d at 989. Moreover, even if the class of protected investors may, in circumstances yet to be determined by the Second Circuit, include foreign investors, Judge Friendly has indicated that such investors must at least reside in the United States. *Bersch v. Drexel Firestone, Inc.,* 519 F.2d at 993 ("[o]ther fact situations, such as losses to foreigners within the United States, are not before us"). The whole logic of this category is that "[a]cts done outside a jurisdiction, but . . . producing detrimental effects within it, justify a state in punishing the cause of the harm as if [the actor] had been present at the [time of the detrimental] effect, if the state should succeed in getting him within its power." *Schoenbaum v. Firstbrook,* 405 F.2d at 206 *quoting Strassheim v. Daily,* 221 U.S. at 285, 31 S.Ct. at 560. In this case Psimenos has at all times resided in Greece. This court believes, therefore, that this case does properly fall within the *Schoenbaum* jurisdictional category.

### B. *Diversity Jurisdiction*

Hutton also moves to dismiss plaintiff's complaint without leave to amend on the ground that plaintiff's other alleged basis of federal jurisdiction, diversity of citizenship, is improperly pleaded. Plaintiff has requested but has not filed a motion for leave to file a second amended complaint in order to cure this pleading deficiency.

Plaintiff's original complaint alleges that Psimenos "resides, and at all relevant times has resided in Greece" (Complaint ¶ 1). Hutton originally moved to dismiss upon several grounds, among them, for failure to properly plead diversity jurisdiction (Memorandum in Support of Defendant's Motion to Dismiss at 11 (footnote)). Plaintiff then filed an amended complaint in which again he pleaded Greek residence (Amended Complaint ¶ 1).

As defendant correctly argues, "a statement that the party is a 'resident' of a particular state or foreign country is not sufficient since jurisdiction depends on citizenship and not mere residence." C. Wright & A. Miller, Federal Practice and Procedure, § 1208 (1969); *see also Prescription Plan Service Corp. v. Franco,* 552 F.2d 493, 498 n. 6 (2d Cir.1977) (mere residency is insufficiency citing Wright & Miller).

Leave to amend pleadings "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a). Additionally, this court is expressly granted authority by 28 U.S.C. § 1653 (1976) to allow plaintiff to amend defective jurisdictional pleadings. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." An application under § 1653 is "addressed to the discretion of the court, and usually the section is to be construed liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist." *John Birch Society v. National Broadcasting Company,* 377 F.2d 194, 198–199 (2d Cir.1967) (citations omitted); *see also Miller v. Stanmore,* 636 F.2d 986, 990 (5th Cir.1981). In *John Birch,* the district court denied leave to replead diversity jurisdiction and the Second Circuit affirmed:

[T]he district judge gave the [plaintiff] a fair opportunity to correct its omission; but no amendment was offered within that period, nor was any application made to the court for a further extension of time within which to do so.

\* \* \* \* \* \*

Where ... as in the present case, the district court has pointed out the defects in the complaint and has afforded a plaintiff a reasonable time to amend and the plaintiff, with the intention to delay, has not done so, the appellate court will not allow the plaintiff-appellant leave to amend.

*Id.* at 199. In this case, plaintiff's only explanation for his failure to plead diversity jurisdiction correctly in his amended complaint is that the error was due to an oversight.

The court notes that in *John Birch,* the district court pointed out plaintiff's pleading defect and the plaintiff, acting in bad faith, failed to correct those defects. Here, although an elementary error was twice committed, Hutton has made no showing that plaintiff omitted to amend this defect with the purpose of delaying those proceedings. Although plaintiff's carelessness may be unprofessional, it does not rise to the level of bad faith. However, any motion for leave to replead must include documentary evidence so that this court can determine from the record whether jurisdiction may be found. Should it appear upon the filing of a motion for leave to replead that plaintiff is engaging in vexatious tactics with the purpose of delaying these proceedings, the court will impose appropriate sanctions.

The court admonishes plaintiff that any leave to replead, if granted at all, shall be conditional upon terms that this court has the power to determine. *See* 28 U.S.C. § 1653; Fed.R.Civ.P. 15, advisory committee note, 1963 amendment ("the court is to determine in light of the particular circumstances whether filing should be permitted, and if so, upon what terms"). While plaintiff's carelessness may not preclude him from filing a second amended complaint, his oversight will cost Hutton unnecessary additional costs; thus, plaintiff will be required to reimburse certain of Hutton's attorney's fees, the exact amount of which is to be determined later. In addition, plaintiff may also be required to reimburse Hutton's costs if an evidentiary hearing on the issue of plaintiff's citizenship is necessary.

*Conclusions*

This court believes that it lacks subject matter jurisdiction over Psimenos' federal commodities claims for two reasons. First, the transactions involved are "on any view predominantly foreign," *Bersch v. Drexel Firestone, Inc.,* 519 F.2d at 985, and this court cannot believe that "Congress would have wished the precious resources of United States courts ... to be devoted to them," *id.* Second, Psimenos' claims do not fall within any of the other jurisdictional categories enunciated by Judge Friendly.

Accordingly, the federal claims are dismissed without leave to replead on the ground that this court lacks subject matter jurisdiction over these predominantly foreign claims. Since the jurisdiction conferring claims are dismissed on jurisdictional grounds, the pendent common law claims must also be dismissed. Plaintiff must file any motion to amend his complaint yet again no later than February 8, 1983. Otherwise, this case will be dismissed with prejudice.