**ALPA S.A. AGROINDUSTRIAL ALEMANO, Plaintiff,**

v.

**ACLI INTERNATIONAL INC., Defendant.**

**No. 82 Civ. 6136 (GLG).**

United States District Court, S.D. New York.

Nov. 2, 1983.

---

Pavia & Harcourt, New York City, for plaintiff by Frances B. Bernstein, David A. Botwinik, Jeffrey E. Livingston, of counsel.

Davis Polk & Wardwell, New York City, for defendant by Frank S. Moseley, Paul R. Koepff and Richard Pu, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This is an action by plaintiff Alpa S.A. Agroindustrial Alemano ("Alpa"), a Paraguayan corporation, seeking damages for claims allegedly arising under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (1982), as well as for pendent state claims against defendant ACLI International Commodity Services, Inc. ("ACLI"), a New York corporation.[1] The defendant moves to dismiss the complaint on various grounds. First, the defendant moves to dismiss the federal commodities causes of action for lack of subject matter jurisdiction. Second, the defendant moves to dismiss the entire action on the grounds of *forum non conveniens.* Lastly, the defendant moves to dismiss the complaint for failure to join parties under Rule 19 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the defendant's motion to dismiss is denied.

## FACTS

Plaintiff Alpa is engaged in the business of buying Paraguayan soybeans from local farmers, processing the beans, and then selling the beans for export. Alpa used a German company, Poppe & Co. ("Poppe"), as its broker in the physical trading of the soybeans. To protect itself from the risks in the agribusiness, Alpa also employed Poppe to handle hedging arrangements through which futures contracts would be purchased on the Chicago Board of Trade. These arrangements were made through an employee of Poppe called Renner. Renner approached ACLI International Commodity Services GmbH ("ACLI Germany"), the defendant's affiliate in Germany, to arrange for Alpa's hedging transactions. ACLI Germany supplied Renner with defendant ACLI's various printed forms for opening a hedge account. In May of 1979,

Alpa's then managing director, Ernst Greten, Jr., signed the defendant's forms in Germany to open the commodity account. In the spring of 1979, Renner started to conduct his hedging operations for Alpa and to trade in Alpa's account with ACLI.

Alpa alleges that Renner engaged in unauthorized speculative trading in the Alpa account and that as a result it suffered approximately $850,000 in damages. Alpa claims that this could not have been accomplished without ACLI Germany's negligence or assistance in Renner's activities, as well as the negligence of defendant ACLI. In particular, Alpa alleges that ACLI's trading reports of Alpa's account were sent only to Renner contrary to ACLI's forms which provided for the reports to be sent to Alpa's offices in Paraguay and to an officer other than the person actually doing the trading. This allegedly enabled Renner to substitute his own trading reports for those of ACLI and to pass on to Alpa reports devoid of the speculative trades. Alpa also alleges that ACLI Germany made no attempt to notify Alpa of Renner's speculative trades which ACLI Germany should have known were unauthorized and in violation of the defendant's forms signed by Alpa.

In addition to permitting Renner to speculate in Alpa's account, Alpa alleges that ACLI and/or ACLI Germany permitted Renner to transfer Alpa's funds to accounts owned or controlled by Poppe without Alpa's authorization and without informing Alpa. As a result, $164,267 was transferred from Alpa's account to third parties.

Alpa alleges that the conduct and involvement of ACLI in the above speculation and conversion claims were in violation of the Commodity Exchange Act and the

---

**1.** There has been some confusion over the identity of the exact party being sued—whether it is ACLI International, Inc. or ACLI International Commodity Services, Inc. ACLI International, Inc. is a conglomerate with many subsidiaries. Two of its subsidiaries are ACLI International Commodity Services, Inc. located in New York and ACLI International Commodity Services

GmbH located in Germany. Both of these subsidiaries are involved in the commodities markets. It appears that the plaintiff is suing ACLI International Commodity Services, Inc., one of the subsidiaries of the parent company. Even if it were later to appear that Alpa is suing ACLI International, Inc., the parent company, our decision of this motion would remain the same.

regulations promulgated thereunder as well as common law principles.

DISCUSSION

## A. Subject Matter Jurisdiction

Defendant ACLI moves to dismiss the Commodity Exchange Act claims for lack of subject matter jurisdiction since these causes of action allege predominantly foreign transactions. This Court concludes that it has jurisdiction over these claims.

"'When ... a court is confronted with transactions that on any view are predominantly foreign, it must seek to determine whether Congress would have wished the precious resources of United States courts and law enforcement agencies to be devoted to them rather than leave the problem to foreign countries.'" *Fidenas AG v. Compagnie Internationale Pour L'Informatique CII Honeywell Bull S.A.*, 606 F.2d 5, 9 (2d Cir.1979) (quoting *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975)). Congress did not intend the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled to foreigners. *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1017 (2d Cir.1975). Under this theory, the courts have allowed for the possibility of subject matter jurisdiction over a suit for damages by a defrauded foreigner. *Fidenas, supra*, 606 F.2d at 10.

Most of the Second Circuit decisions finding subject matter jurisdiction in transnational situations have relied on conduct within the United States. *Fidenas AG v. Honeywell Inc.*, 501 F.Supp. 1029, 1040 (S.D.N.Y.1980) (citations omitted). "[J]urisdiction [based on activity in the United States] is limited to the perpetration of fraudulent acts themselves and does not extend to mere preparatory activities or the failure to prevent fraudulent acts where the bulk of the activity was performed in foreign countries...." *Vencap, supra*, 519 F.2d at 1018. Thus, the issue becomes "whether the fraud [or the wrong] alleged has sufficient contacts with the United States to invoke the federal securities and commodity laws or whether it is 'predominantly foreign' in nature." *Mormels v. Girofinance, S.A.*, 544 F.Supp. 815, 817 (S.D.N.Y.1982).

The cases cited by the parties regarding the reach of the provisions of our securities and commodity laws with respect to transactions having substantial foreign elements are cases that charge the defendants with fraud and misrepresentation. *See, e.g., IIT v. Cornfeld*, 619 F.2d 909 (2d Cir.1980); *Fidenas AG v. Compagnie Internationale Pour L'Informatique CII Honeywell Bull S.A.*, 606 F.2d 5 (2d Cir. 1979); *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir.1975); *Psimenos v. E.F. Hutton & Co., Inc.*, 560 F.Supp. 1111 (S.D.N.Y.1983), *Mormels v. Girofinance, S.A.*, 544 F.Supp. 815 (S.D.N.Y.1982). In the instant case, however, Alpa is primarily charging ACLI with breach of contract and fiduciary obligations and only secondarily with fraud. Therefore, the above-cited cases should be used as guidelines and not simply blindly applied. In each of those cases, the court looked for the site of the activities essential to the alleged fraud. Similarly, in this case, the Court must look for the site of the activities essential to the alleged breach of contract and of the duty owed to Alpa, rather than to the site of the alleged fraud committed by Renner. In so viewing the issue, it is easy to see that the United States is the site of all the activities of Alpa's claims and that this Court has subject matter jurisdiction over the Commodity Exchange Act claims.

Alpa alleges that it signed a contract with ACLI to open a hedge account which provided for the maintenance and regulation of the account under the Commodity Exchange Act. According to Alpa, ACLI breached the contract by allowing Renner, without authorization, to speculate in the account and to transfer money from the account. ACLI bought the futures contracts for both the hedging and speculative transactions on United States exchanges or boards of trade. Also, the account and

records of all the transactions and transfers were maintained in New York by ACLI. The only foreign aspects of these transactions were that the customer was a foreigner, the intermediaries—ACLI Germany, Poppe, and Renner—were foreigners, the contract was signed abroad, and the orders were transmitted from abroad.

Given these facts, the Court has little difficulty in finding subject matter jurisdiction with respect to Alpa's claims. Alpa's account was opened pursuant to and regulated by a United States commercial contract; the transactions were subject to the provisions of the Commodity Exchange Act and the rules and regulations thereunder; the futures contracts purchased were American; and the transactions were partially consummated, and the account was partially maintained, in the United States. These *factors argue strongly for applying the governing provisions of our commodities laws. Cf. IIT v. Cornfeld,* 619 F.2d 909, 918 (2d Cir.1980) (stating that the factors of the American nationality of the issuer and the consummation of the transaction in the United States point strongly towards applying the anti-fraud provisions of the securities laws of the United States).

ACLI attempts to argue that Alpa's allegations about United States-related conduct are insufficient to confer subject matter jurisdiction. ACLI points out that Alpa has not alleged that any of Renner's wrongdoing occurred in the United States or that the negligent conduct of ACLI Germany took place in the United States. Rather, contends ACLI, the most that Alpa has alleged is that ACLI was somehow negligent in not stopping Renner's speculative trades.

The Second Circuit's opinion in *Cornfeld, supra,* 619 F.2d 909, shows the weakness of this argument. In *Cornfeld,* the court rejected the notion that a defendant in ACLI's position could evade responsibility for its conduct by hiding behind the alleged primary role of foreign participants in the complained of transactions. The court stated:

An actual participant in a fraud is no less a principal because someone else originated the plan. [The foreign plaintiff is] complaining of deception practices on [it] by both the [United States corporation], whose acts were primarily in the United States, and [a Luxembourg corporation], whose acts were mainly outside it, both allegedly aided and abetted by the defendants.... The ability of such a victim to maintain such an action was decided [in an earlier decision], we see no reason to depart from that decision....

*Id.* at 918. Going on to reject the allegation that the transactions were essentially foreign, the court used language applicable to the instant case.

The complaint alleged that [the foreign plaintiff] purchased the 200,000 shares of [the American corporation's] common stock ... in the United States. Virtually all these shares were bought by [the defendant American broker] for [the plaintiff] in the over-the-counter market, and the certificates were kept in [the plaintiff's] sub-custodial account in New York City with the Bank of New York. We see nothing foreign in this transaction except that the purchaser was a foreigner and the orders were transmitted from abroad.... None of our cases or any others intimate that foreigners engaging in security purchases in the United States are not entitled to the protection of the anti-fraud provisions of the securities laws.

*Id.* at 918.

Defendant ACLI also argues that *Mormels v. Girofinance, S.A., supra,* 544 F.Supp. 815, is dispositive of the jurisdiction issue. *Mormels,* however, is factually distinguishable from the instant case. There, the plaintiffs alleged that they opened a commodity trading account with Girofinance S.A. ("Girofinance"), a Costa Rican corporation, in reliance upon misrepresentations made by Girofinance that it was an agent of the defendant E.F. Hutton & Co. ("Hutton"), a United States brokerage firm. The plaintiffs claimed that Girofinance converted their funds and fled Cos-

ta Rica with them. The court held that there was no subject matter jurisdiction over the plaintiffs' federal securities and commodities claims because Costa Rica was the site of all the underlying activities upon which the claims were based. *Id.* at 817–18. Costa Rica was where (1) the plaintiffs resided, (2) the misrepresentations were made, (3) the monies were delivered, (4) the accounts were opened and maintained, and (5) the conversion occurred.

These facts make *Mormels* distinguishable from the instant case in at least two significant ways. First, in *Mormels*, the plaintiffs never had an account with the defendant American commodities broker, Hutton; nor had Hutton ever executed trades for the plaintiffs. Instead, Girofinance opened in its own name an omnibus account with Hutton rather than individual trading accounts in the plaintiffs' names. Thus, the plaintiffs never became Hutton's customers. In the instant case, however, Alpa did sign ACLI's forms to open an individual trading account. Thus, Alpa was a customer of ACLI and entitled to the protection of the Commodity Exchange Act.

The second way in which this case is different from *Mormels* is that in this case the United States is the site of all the activities that are at the core of Alpa's Commodity Exchange Act claims against ACLI. In both of Alpa's claims, the United States is the site of the action or inaction of ACLI (allowing the speculation and conversion to occur), which allegedly constitutes ACLI's breaches of contract and fiduciary duty that happened to contribute to the fraudulent scheme. As to the claims for damages resulting from Renner's speculative trading, the essential events occurred both in the United States and Germany. Renner initiated the orders for the speculative trades from Germany and ACLI Germany transmitted them to ACLI in the United States, where they were executed. Renner tampered with the trading reports in Germany. However, as the ACLI contract signed by Alpa states, these reports were to be mailed to Alpa's offices and not to Renner who was doing the actual trad-

ing. Thus, even though some of the primary activities occurred in Germany, ACLI's actions in the United States played an important part in the success of the speculation scheme. As to the claims for damages from the conversion of Alpa's funds in its account to accounts of third parties, both the United States and Germany are sites of the activities essential to the fraud. The transfer orders were initiated by Renner from Germany. The transfers occurred in the United States where the plaintiff's account was maintained. The money may have been ultimately converted in Germany where ACLI Germany also maintains some accounts involved in the scheme. However, the action and inaction of ACLI in the United States were essential to the completion of the fraudulent conversion.

Another case dealing with the issue of subject matter jurisdiction over foreign transactions in commodities is *Psimenos v. E.F. Hutton & Co.*, 560 F.Supp. 1111 (S.D. N.Y.1983). In *Psimenos*, the foreign plaintiff claimed that he opened a commodities trading account with the defendant, Hutton. At that time, Hutton's agent and employee in Athens informed the plaintiff that his account would be managed in accordance with Hutton's standard procedures and with the rules and regulations of the Commodities Futures Trading Commission. However, Hutton's employee failed to inform the plaintiff of the speculative, unresearched and leveraged nature of the transactions in his account. The plaintiff claimed that, contrary to what had been promised, Hutton did not have professional managers monitoring his account and did not continually evaluate the performance of its manager. The plaintiff claimed that as a result of the misrepresentations he had suffered losses in excess of $200,000.

In holding that the court did not have subject matter jurisdiction over the Commodity Exchange Act claims, the court found that the sites of all the fraudulent misrepresentations were foreign. *Id.* at 1113. The fact that purchases and sales in the plaintiff's account were made on the

facilities of commodities futures contract markets in New York did not alter the court's ruling because the plaintiff did not claim that those activities were in any way fraudulent or even in preparation of fraudulent activity. Indeed, the court considered them to be tertiary or secondary activities with respect to the fraud in question. *Id.* at 1114.

The instant case is distinguishable. The site of all the activities of ACLI in breach of the hedge account that happened to contribute to the fraud was the United States. The conduct complained of by Alpa took place in the United States and this conduct was essential, not tertiary or secondary, with respect to the claims of damages by the alleged speculation and conversion. For example, Alpa has alleged that defendant ACLI misdirected legally required trading reports to Germany instead of forwarding them to Alpa in Paraguay. This action enabled Renner to hide his speculative trades from Alpa. Alpa also has alleged that ACLI transferred money from Alpa's account, held by ACLI in New York, to third parties without Alpa's consent and without notifying Alpa. This inaction enabled Renner to convert money from Alpa.

Finally, the fact that Alpa entered into a contract with a United States commodity company to initiate trades on the Chicago futures market supports this Court's ruling that it has subject matter jurisdiction. The way to encourage foreign traders to trade on the Chicago futures market, rather than on foreign markets, is to maintain a regulated market with standards of care imposed on commission merchants like ACLI as well as on the exchanges themselves. These standards should be applied as long as the actual trade is made on a United States exchange, whether or not the trade is initiated from abroad and whether or not it is for a foreign customer. A commission merchant should not be able to evade the responsibility of complying with the rules and regulations of the Commodity Exchange Act by utilizing affiliates based in foreign countries and avoiding the standard of care owed to its own customers. Public policy dictates this conclusion.

In sum, the defendant's motion to dismiss the federal commodities causes of action is denied because these actions are not predominantly foreign.

## B. *Forum Non Conveniens*

■ Defendant ACLI moves to dismiss the entire action on the ground of *forum non conveniens.* "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). As the Supreme Court has noted, the general rule is that the plaintiff's choice of forum should rarely be disturbed. *Id.* at 508, 67 S.Ct. at 843. Only when an alternative forum has jurisdiction to hear the case and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of sound discretion, dismiss the case. *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947).

■ To assist trial courts in exercising their discretion, the Supreme Court, in *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, provided a list of private interest factors affecting the convenience of the litigants and a list of public interest factors affecting the convenience of the forum. The private interests include the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, the enforceability of a judgment if one is obtained, as well as other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* at 508, 67 S.Ct. at 843. The public interest factors include the administrative

problems which follow when litigation is added to heavy caseloads in congested centers instead of being handled at its origin, the imposition of jury duty upon a community which has no relation to the litigation, the remoteness of the forum from the situs of the pertinent affairs, and the difficulty which arises when a forum must apply foreign choice of law rules and foreign law. *Id.* at 508–09, 67 S.Ct. at 843.

■ Before turning to the weighing of these factors, however, the Court notes that defendant ACLI has not even adequately demonstrated the availability of an alternative forum in which the defendant is amenable to process. ACLI denies that it had an office in Germany or did business there and does not offer to subject itself to the jurisdiction of the German courts. Rather, ACLI attempts to argue that an alternative forum exists because Alpa can bring an action against ACLI Germany in a German court. Unfortunately, this argument misses the point that the alternative forum must be one in which the plaintiff can sue the present defendant, not an alternative defendant. This failure to demonstrate the existence of an alternative forum is by itself enough to deny ACLI's *forum non conveniens* motion.[2]

■ In addition, even if the Court were to assume the existence of such an alternative forum, the private and public interest factors would still not favor ACLI strongly enough to justify the granting of its motion. ACLI argues that virtually all the events of any consequence took place in Germany and that the real defendants (Renner and Poppe), witnesses, and reliable evidence are in Germany. This position would be accurate if the action were only one for fraud, for many of the witnesses who possess knowledge of the related fraudulent activities are located in Ger-

many, along with records and papers pertaining to the fraudulent scheme. However, this is not primarily an action sounding in fraud. Rather, Alpa charges ACLI primarily with breach of contract that happened to contribute to the fraud. Under Alpa's primary claim, it is ACLI's conduct in the United States that is critical. According to Alpa, if ACLI had acted in accordance with the rules and regulations of the Commodity Exchange Act and the customer account contract, Renner would not have been successful in defrauding Alpa by speculating and converting. Therefore, it is the action of ACLI in the United States that is of consequence, and the actual defendant (ACLI), the witnesses, and the reliable evidence are all located in the United States.

Also, the public interest factors favor denial of the *forum non conveniens* motion. Although retention of this case will undoubtedly add to the already existing heavy caseload in the federal courts, the added burden cannot be avoided when, as has just been shown, the facts underlying this matter reveal such a strong United States interest in the outcome of the case. Defendant ACLI is a New York corporation which is in the business of acting as a broker in the United States commodities markets. ACLI has potential customers sign a contract that enables the customers to open up commodities trading accounts which are regulated by the Commodity Exchange Act. This forum is not remote from the affairs of ACLI and the community has an interest in the litigation to assure that ACLI is conducting its affairs in a legal and fair manner. Also, there is no difficulty in applying foreign law because it is New York law and federal law that govern some of the transactions between ACLI and its customers, as the contract between the parties so states.[3]

---

2. The Court notes that ACLI wants to cross-sue Poppe and Renner but is unable to get jurisdiction over them in the United States courts. Thus, by choosing a United States court, instead of a German court, Alpa forecloses ACLI's option to implead Poppe and Renner. Although this factor undermines the convenience of this

forum for ACLI, it is not enough to justify denying the plaintiff his choice of forum.

3. All the relevant contract documents between Alpa and ACLI indicate that the laws of the United States and New York are to be applied in controversies of the present kind. The applicable provisions are as follows:

A final factor to consider is the forum selection clause in the contract entered into between Alpa and ACLI. *Cf. Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. 71, 74 (S.D.N.Y.1978) (stating that a forum selection clause is one of the factors to consider in the determination of a motion to transfer). Both parties agreed to the following provision: "In the event of any controversy between you and the customer arising under or in connection with the terms of this Agreement, the customer hereby consents to submit to the jurisdiction of the Courts of the State of New York." Defendant's Notice of Motion, Exhibit 1(b), Customer's Agreement at 2.

■ This clause undercuts any inconvenience that ACLI may argue; ACLI cannot now be heard to complain about inconvenience resulting from an agreement into which it freely entered. *Full-Sight Contact Lens Corp., supra,* 466 F.Supp. at 74. Compliance with forum selection clauses has been upheld by both the United States Supreme Court and the Second Circuit. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972); *National Equipment Rental, Ltd. v. Reagin,* 338 F.2d 759, 762 (2d Cir. 1964).

To conclude, dismissal is not appropriate here, both because ACLI has failed to show that Germany can provide an alternative forum and because, even if it could, the balance of convenience does not weigh heavily in favor of trial in Germany. The defendant's motion to dismiss on the grounds of *forum non conveniens* is, therefore, denied.

## C. Failure to Name Indispensable Parties

ACLI moves to dismiss the action also because Alpa has failed to name indispensable parties—Poppe and Renner.

Rule 19 of the Federal Rules of Civil Procedure sets out a two-step analysis of compulsory joinder problems. Rule 19(a) lists the criteria for determining whether an absent party should be joined, if feasible. If joinder of a necessary party is not feasible, the court must determine under Rule 19(b) whether the action should proceed among the parties before it, or should be dismissed because the absent person is indispensable.

■ The first step is to determine whether Poppe and Renner are persons who should be joined under Rule 19(a). As the rule states:

A person ... shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

All transactions shall be subject to the constitution, rules, regulations, customs, usages, rulings and interpretation, then obtaining, of the exchange or market and its clearing house, if any, where the transactions are executed by you or your agents. All transactions under this agreement shall also be subject to any law, rule, or regulation then applicable thereto, including, but not by way of limitation, the provisions of the Commodity Exchange Act, as amended, and the rules and regulations thereunder.
Defendant's Notice of Motion, Exhibit 1(b), Customer's Agreement at 1.
This agreement is made under and shall be governed by the State of New York in all respects, including construction, validity, per-

formance and enforcement. Its provisions shall be continuous; shall cover individually and collectively all accounts which the customer may open or re-open with you; and, shall inure to the benefit of, and bind you, your successors and assigns, whether by merger, consolidation or otherwise, as well as the heirs, executors, administrators, legatees, successors, personal representatives and assigns of the customer.
*Id.* at 2. "The provisions of this agreement shall in all respects be construed according to, and the rights and liabilities of the parties hereto shall in all respects be governed by, the laws of the State of New York." Defendant's Notice of Motion, Exhibit 1(c), Customer's Agreement at 2.

Fed.R.Civ.P. 19(a). Under the rule's definition of persons whose joinder in the action is desirable, neither Poppe nor Renner are such persons. The Court will be able to grant complete relief between Alpa and ACLI without the presence of Poppe or Renner. And the subject of the action—Alpa's contract and account with ACLI—is not a matter in which Poppe or Renner have a protectable interest. In conclusion, Poppe and Renner are not persons who should be joined under Rule 19(a). Thus, the defendant's motion to dismiss for failure to name indispensable parties is denied.

CONCLUSION

The defendant's motion to dismiss this action on various grounds is denied.

SO ORDERED.