## STRASSHEIM, SHERIFF OF COOK COUNTY, *v.* DAILY.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 638. Argued April 3, 4, 1911.—Decided May 15, 1911.

In a *habeas corpus* proceeding in extradition it is sufficient if the count in the indictment plainly shows that the defendant is charged with a crime. *Pierce* v. *Creecy,* 210 U. S. 387.

Where a guaranty goes not to newness but to fitness of articles furnished, it is a material fraud to furnish old articles even if they can meet the test of the guaranty; and the fact that the purchaser may rely on the guaranty does not exclude the possibility that the purchase price was obtained by false representations as to the newness of the articles.

A State may punish one committing crimes done outside its jurisdiction for the purpose of producing detrimental effects within it when it gets the criminal within its power.

Commission of the crimes alleged in this indictment—bribery of a public officer and obtaining public money under false pretenses— warrants punishment by the State aggrieved even if the offender did not come into the State until after the fraud was complete.

An overt act becomes retrospectively guilty when the contemplated result ensues.

One who is never within the State before the commission of a crime producing its results within its jurisdiction is not a fugitive from justice within the rendition provisions of the Constitution, *Hyatt* v. *Cork-*

*ran,* 188 U. S. 691, but, if he commits some overt and material act within the State and then absents himself, he becomes a fugitive from justice when the crime is complete if not before.

Although absent from the State when the crime was completed in this case, the party charged became a fugitive from justice by reason of his having committed certain material steps towards the crime within the State, and the demanding State is entitled to his surrender under Art. IV, § 2 of the Constitution of the United States and the statutes providing for the surrender of fugitives from justice.

THE facts are stated in the opinion.

*Mr. Thomas E. Barkworth,* with whom *Mr. Franz C. Kuhn,* Attorney General of the State of Michigan, *Mr. Ferdinand L. Barnett* and *Mr. Charles W. McGill* were on the brief, for appellant.

*Mr. William S. Forrest* for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from an order on *habeas corpus* discharging the respondent, Daily, from custody under a warrant of the Governor of Illinois directing his extradition to Michigan as a fugitive from justice from that State. Daily, it appears, had been indicted in Michigan for bribery and also for obtaining money from the State by false pretenses, and a requisition had been issued to which the warrant of the Governor of Illinois was the response. The District Judge who issued the *habeas corpus* was of opinion, however, that the facts alleged in the indictment for obtaining money by false pretenses did not constitute a crime against the laws of Michigan and that the evidence showed that Daily was not a fugitive from justice. We will consider these two questions in turn.

The third count of the indictment is the only one that needs to be stated, although all the counts alleged a false representation that certain machinery, to be sold to the State, was new, whereas in fact it was second-hand and

used, and the obtaining from the State of ten thousand dollars by means of such representation. The third count alleges that one Armstrong was warden of the Michigan State prison at Jackson, and, in conjunction with the Board of Control of the prison, authorized to buy machinery for a cordage plant in the prison; that he was authorized to accept the machinery and to pay for it from the funds of the State under his control; that said Board and Armstrong contracted with the Hoover and Gamble Company, acting through Daily, the agent, and one Eminger, the secretary of the company, for the purchase of such machinery, all of which, by the contract, was to be new; that Armstrong, Daily and Eminger had agreed beforehand to substitute old, worn and second-hand machinery, of less value, for that which was contracted for, the Board being ignorant of their intent and being deceived and defrauded by the substitution; that the second-hand machinery having been substituted, Armstrong, Daily and Eminger, with intent to cheat the State, to wit, on the first day of May, 1908, falsely pretended that the machinery so furnished was the new machinery required by the contract, and rendered bills for the same at the contract prices; that the bills were audited and allowed by Armstrong and the machinery paid for as new machinery, and that Armstrong, Daily and Eminger, by means of the false pretenses set up, obtained from the State of Michigan money, to wit, ten thousand dollars, the State and the Board of Control relying upon the false pretenses and being deceived thereby. We sum up the count thus broadly, because, although considerable ingenuity was spent in pointing out defects that would occur to no one outside of the criminal law, yet, whatever may be thought of the criticisms in Michigan, it is plain that the count shows that the defendant 'was substantially charged with a crime,' and upon *habeas corpus* in extradition proceedings, that is enough. *Pierce* v. *Creecy,* 210 U. S. 387, 405.

It would seem, although the record is otherwise, that the judge below really went on the ground that the terms of the contract excluded a reliance upon the false representation alleged.. The contract after stating that it was for "all new machinery to be manufactured by the Hoover & Gamble Company," contained a guaranty that the machinery should be "constructed in a thorough manner free from any defects of machinery or workmanship and finished in a first-class manner." It also provided for the retention of the last quarter of the price "until the machinery is all installed and tested, and operating, so as to fulfill the guaranty above given, to the satisfaction and approval of C. G. Wrentmore, Cons. Engr. of the Board of Control." The case is not to be tried on *habeas corpus.* Therefore it is enough to say that the guaranty and testing clauses do not exclude the possibility that the money was obtained by the false pretenses alleged. The guaranty goes, not to newness, but to workmanship and freedom from defects, and the approval of the consulting engineer is required only to show that the guaranty is fulfilled. The guaranty does not exclude other representations and undertakings. As. has been seen it was expressed in the contract that the subject-matter of the guaranty was machinery to be manufactured and new. If old machinery was put in and represented to be new it was a material fraud.

We come then to the other question, whether the facts show that the defendant is a fugitive from justice. The bribery is laid under a videlicet as taking place on May 13, 1908; the false pretenses are averred to have been made on May 1, of the same year. On both of these dates the defendant was in Chicago. What happened, in short, was this. Daily had tried to sell second-hand machinery, in which he had an interest, to the State, and it was rejected. At the time of receiving notice, or afterwards, but within ten days before July 22, 1907, he had a conversation with Armstrong in Chicago, in which he said it was

a mistake not to accept his proposition; that he thought it could be arranged, and that there would be a nice present in it for Armstrong, which he said would be 'one thousand dollars anyway.' In the affidavit of Armstrong accompanying the requisition it is stated explicitly that the present was offered if Armstrong would let Daily substitute his old machinery for new in case a contract should be made.

On July 22, 1907, the successful bid of the Hoover and Gamble Company was sent in. It was signed by Daily, and Daily was with the Board of Control in Michigan, accompanying it, when it was considered and accepted. He had made a previous visit to the Board in the spring, and he was there in November to see the machinery and to delay shipment. At the latter date he told Armstrong that Eminger, the Secretary of the Company, had objected to the word 'new' in the contract and was afraid they would have trouble with the Consulting Engineer, but Armstrong replied that he did not think they would have any trouble with him. Finally, in April, 1908, Daily was at the prison again, in further execution of the program arranged by him and Armstrong, as the judge below properly found. Armstrong's affidavit states that Daily did substitute his old machinery, that it was understood that Armstrong was not to communicate the fact to the proper officer of the State or to the Board of Control, that the plant was put in, that the contract price was paid in full, and that thereafter Daily paid Armstrong fifteen hundred dollars, as he had agreed. But it may be assumed, for the moment, that Daily personally did no act in Michigan in any way connected with his plan otherwise than as we have stated above.

If a jury should believe the evidence and find that Daily did the acts that led Armstrong to betray his trust, deceived the Board of Control, and induced by fraud the payment by the State, the usage of the civilized world would warrant Michigan in punishing him, although he

never had set foot in the State until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power. *Commonwealth* v. *Smith*, 11 Allen, 243, 256, 259. *Simpson* v. *State*, 92 Georgia, 41. *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 356. *Commonwealth* v. *Macloon*, 101 Massachusetts, 1, 6, 18. We may assume therefore that Daily is a criminal under the laws of Michigan.

Of course we must admit that it does not follow that Daily is a fugitive from justice. *Hyatt* v. *Corkran*, 188 U. S. 691, 712. On the other hand, however, we think it plain that the criminal need not do within the State every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the State and does the rest elsewhere, he becomes a fugitive from justice, when the crime is complete, if not before. *In re Cook*, 49 Fed. Rep. 833, 843, 844. *Ex parte Hoffstot*, 180 Fed. Rep. 240, 243. *In re William Sultan*, 115 No. Car. 57. For all that is necessary to convert a criminal under the laws of a State into a fugitive from justice is that he should have left the State after having incurred guilt there, *Roberts* v. *Reilly*, 116 U. S. 80, and his overt act becomes retrospectively guilty when the contemplated result ensues. Thus in this case offering the bid and receiving the acceptance were material steps in the scheme, they were taken in Michigan, and they were established in their character of guilty acts when the plot was carried to the end, even if the intent with which those steps were taken did not make Daily guilty before. *Swift* v. *United States*, 196 U. S. 375, 396.

We have given more attention to the question of time than it is entitled to, because of the seeming exactness of

the evidence. But a shorter and sufficient answer is to repeat that the case is not to be tried on *habeas corpus,* and that when, as here, it appears that the prisoner was in the State in the neighborhood of the time alleged it is enough.

*Judgment reversed, prisoner remanded.*