(No. 65048.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PHILIP J. CARUSO, Appellant.

*Opinion filed December 21, 1987.*

G. Joseph Weller, Deputy Defender, and Michael F. Braun, Assistant Defender, of the Office of the State Appellate Defender, of Elgin (Victor J. Piekarski, Brian J. Clarke, and Michael Resis, of Querry, Harrow, Gulanick & Kennedy, Ltd., of Chicago, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Jack Donatelli, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Philip J. Caruso, was charged in separate two-count indictments in the circuit court of Du Page County with the offenses of child abduction (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 10—5(b)(1)) and unlawful restraint (Ill. Rev. Stat. 1977, ch. 38, par. 10—3) involving his two daughters, Kathleen and Deborah. Defendant filed several motions to dismiss the child abduction counts, including one motion based on an *ex post facto* objection and another asserting that Illinois lacked subject-matter jurisdiction. The circuit court dismissed the child abduction counts, finding them to be an unconstitutional *ex post facto* application of the law. The *ex post facto* and subject-matter jurisdiction objections were both addressed on appeal. The appellate court reversed, finding that the law was not applied *ex post facto* and that Illinois has criminal jurisdiction over the child abduction counts. (152 Ill. App. 3d 1074.) We allowed the defendant's petition for leave to appeal under Rule 315 (107 Ill. 2d R. 315).

Defendant did not address the *ex post facto* objection in his brief before us and conceded at oral argument that he was abandoning his *ex post facto* objection; therefore, the only issue presented for review is whether Illinois

may assert criminal jurisdiction over defendant's conduct where the defendant harbored his children outside of this State and failed to return them to their mother in violation of a court order of this State.

Inasmuch as the child abduction counts were dismissed, this cause raises a question on the pleadings. The child abduction counts at issue in this appeal charge that on December 24, 1984, within Du Page County, defendant "intentionally violated the terms of a valid court order entered December 20, 1977, in the Eighteenth Judicial Circuit, Du Page County, granting sole custody of [Kathleen and Deborah] to Janet Faye Caruso in that said defendant detained the [children] outside the jurisdiction of the court." The State does not dispute that defendant removed the children from Illinois in 1977 and that defendant and the children resided in Ohio from that time until at least through December 24, 1984, the date the indictment for the offense of child abduction was returned.

Defendant argues that any allegedly criminal conduct of his was committed in Ohio, not Illinois, and therefore is not subject to this State's criminal jurisdiction. In defendant's view, the failure to abide by the terms of a valid court order of custody, although an element of the offense of child abduction, is not the gist of the offense of child abduction. Defendant asserts to the contrary that the commission of the act of taking, concealing or detaining the child is the gist of the offense. Therefore, according to defendant, the jurisdictionally significant act—the detaining of the children—took place in Ohio, where defendant lived with the children from 1977 through 1984. Defendant concludes that Illinois cannot assert criminal jurisdiction over him because his conduct occurred entirely outside Illinois and he could not form any intent or commit any act that was criminal while he was in Illinois.

The State responds that the failure to return the children in compliance with the court order can be characterized as an omission to perform a duty imposed by Illinois law and is, therefore, regarded as being committed within Illinois pursuant to section 1—5(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 1—5(c)), regardless of defendant's location at the time of the omission. The State also maintains that an element of the offense of child abduction is the intentional violation of the court order, which is committed within Illinois no matter where the defendant may be located, and jurisdiction is thus conferred under section 1—5(a)(1) (Ill. Rev. Stat. 1985, ch. 38, par. 1—5(a)(1)).

The jurisdiction of the circuit courts is conferred by the provisions of section 9 of article VI of the Illinois Constitution, which provides that the circuit courts have "original jurisdiction of all justiciable matters" (Ill. Const. 1970, art. VI, §9), and section 1—5 of the Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 1—5). (See *People v. Gilmore* (1976), 63 Ill. 2d 23, 26.) Section 1—5 provides in relevant part:

"(a) A person is subject to prosecution in this State for an offense which he commits, while either within or outside the State, by his own conduct or that of another for which he is legally accountable, if:

(1) The offense is committed either wholly or partly within the State;

* * *

(b) An offense is committed partly within this State, if either the conduct which is an element of the offense, or the result which is such an element, occurs within the State. ***

(c) An offense which is based on an omission to perform a duty imposed by the law of this State is committed within the State, regardless of the location of the offender at the time of the omission." (Ill. Rev. Stat. 1985, ch. 38, par. 1—5.)

The purpose of section 1—5 is to establish a broad jurisdictional basis for the prosecution in Illinois of offenses involving persons, property, and public interests in the State, including all jurisdiction afforded by the former Illinois statutes. (Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments, at 20 (Smith-Hurd 1972).) The provisions of section 1—5 are to be interpreted according to that purpose.

Section 1—5 reflects the holding of *Strassheim v. Daily* (1911), 221 U.S. 280, 55 L. Ed. 735, 31 S. Ct. 558, where the United States Supreme Court held:

> "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power." *Strassheim*, 221 U.S. at 285, 55 L. Ed. at 738, 31 S. Ct. at 560.

The appellate court held that Illinois' criminal jurisdiction is broad enough to reach the conduct of defendant occurring outside Illinois' territorial limits in violation of the child abduction statute because the offense as charged here is based on "an omission to perform a duty imposed by the law of this State" as set forth in section 1—5(c) (Ill. Rev. Stat. 1985, ch. 38, par. 1—5(c)). We agree. The jurisdictional reach over omissions under section 1—5(c) is separate and distinct from section 1—5(a). (Ill. Ann. Stat., ch. 38, par. 1—5, Committee Comments, at 20 (Smith-Hurd 1972) ("the omission situation is noted specifically").) Under section 1—5(c), as opposed to section 1—5(a), the location of any conduct that might be an element of an offense based on an omission to perform a duty is irrelevant. Illinois, to enforce the duty imposed by it and to protect the interests served by performance of the duty, has made immaterial the location of the offender and his or her conduct at the time of the omission. Therefore, the reach of this State's criminal juris-

diction under 1—5(c) is not limited by strict territorial considerations.

Instead, the jurisdiction is based on the State's interests in the performance of the duty imposed. Accordingly, several factors must be considered in determining whether Illinois has criminal jurisdiction under section 1—5(c). First, is there an alleged omission to perform a duty? The phrase "omission to *perform* a duty" in section 1—5(c) (emphasis added) indicates that the duty involved must be an affirmative duty, that is, a duty to positively act. Requiring that the duty be affirmative is necessary to avoid an absurdity. If the definition of duty under section 1—5(c) included a passive duty, that is, a duty to *refrain* from certain conduct, then the entire Criminal Code could fit under section 1—5(c). For example, it might be said that everyone has a duty to refrain from killing or stealing. Complying with that duty to refrain from that conduct does not require an individual to "perform" any act. Second, the duty must be imposed by the law of this State.

Next, we must determine whether the offense charged is "based on" that omission. The plain and unambiguous meaning of the phrase "based on" is that the omission must form the foundation or essence of the offense. However, the phrase "based on" does not require that the omission be the only element of the offense.

Unfortunately, determining whether an offense is based on an omission is not a straightforward analysis because the Criminal Code has eliminated the distinction between "omission" and "act." For example, section 2—2 defines an "act" as including a failure or omission to take action. (Ill. Rev. Stat. 1985, ch. 38, par. 2—2.) Similarly, section 4—1 provides that a voluntary act includes an omission to perform a duty. (Ill. Rev. Stat. 1985, ch. 38, par. 4—1.) Consequently, offenses under the Criminal Code are defined by and large with positive terms, such

as "violation," rather than in terms of an omission, such as "failure to obey." Therefore, because there are no strict boundaries between an omission and an act in the Criminal Code, a strictly literal analysis of the terms of a statute is insufficient to determine whether the essence or foundation of an offense is an omission to perform a duty. Instead, an omission to perform a duty forms the foundation or essence of an offense if to perform the offense requires the accused to fail to perform his or her affirmative duty as imposed by the law of this State. The latter type of analysis is necessary to reach the broad jurisdictional basis for the prosecution of offenses involving persons and public interests in Illinois as intended under section 1—5.

Finally, in determining whether an offense is "based on" an omission, there must be a relationship between the purpose of expanding the scope of Illinois criminal jurisdiction as intended by the legislature and the purpose of prohibiting the offense. As stated above, the clear purpose of the jurisdictional grant of section 1—5(c) is to allow Illinois to protect and fulfill the interests served by the imposition and performance of the duty involved. Therefore, the interests sought to be protected by the prohibition of the offense also must be substantially the same as the interests sought to be fulfilled by the imposition or performance of the affirmative duty.

Applying to the facts alleged in this case the above analysis, as dictated by the language and intent of the Criminal Code, and in particular section 1—5, Illinois has subject matter jurisdiction under section 1—5(c). The offense as charged is based on an omission to perform a duty imposed by the law of this State.

First, an omission to perform a duty imposed by Illinois law is alleged. Generally, absent a court order, the living natural parents are equally entitled to the custody of their children. (Ill. Rev. Stat. 1985, ch. 110½, par.

11—7.) In this case, a valid court order rendered by the Du Page County circuit court granted sole custody of Kathleen and Deborah to Janet Faye Caruso under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 601(a)). Custody was determined in accordance with the best interests of the children. (Ill. Rev. Stat. 1985, ch. 40, par 602.) That court order modified the powers, rights and duties of defendant and Janet. In addition to granting Janet the right to custody of Kathleen and Deborah, the court order imposed on defendant an *affirmative* duty to his children, their mother, and this State to comply with that custody order and surrender custody of Kathleen and Deborah to Janet. Once defendant took the children, the court order imposed a continuing duty on him to physically turn over the children to their mother. Defendant could not fulfill that duty by merely refraining from certain conduct. Defendant's failure to turn over custody of Kathleen and Deborah, if proved at trial, would thus constitute an omission to perform an affirmative duty imposed by the law of this State.

Defendant's omission, namely, the failure to surrender custody of the children, forms the foundation or essence of the offense of child abduction under section 10—5(b)(1) of the Criminal Code. The child abduction statute was first effective in 1978, and the amended version in effect on December 24, 1984, the date the indictment was returned, provides in pertinent part:

> "(b) A person commits child abduction when he or she:
>> (1) Intentionally violates any terms of a valid court order granting sole or joint custody to another, by concealing or detaining the child or removing the child from the jurisdiction of the court." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 10—5(b)(1).)

Section 10—5(a)(2) defines "detains" as meaning "taking or retaining physical custody of a child, whether or not

the child resists or objects." Ill. Rev. Stat., 1984 Supp., ch. 38, par. 10—5(a)(2).

Under the child abduction statute, the State must show as a necessary element of the offense that defendant intentionally violated the terms of the court order granting custody of Kathleen and Deborah to their mother, Janet. In other terms, the State must show that defendant, by concealing, detaining or removing the child from the jurisdiction of the court, failed to comply with the terms of the court order requiring him to surrender custody of the children to Janet. If the alleged detention of the children was not in violation of the custody order, defendant would not be guilty of child abduction under section 10—5(b)(1). Committing the offense of child abduction would thus require defendant to fail to perform his affirmative duty. That physical conduct—removing, concealing or detaining—is included in the definition of the offense of child abduction does not change its basic nature of an omission to perform an affirmative duty.

The interests sought to be protected by the creation of the offense are substantially the same as the interests served by the imposition and performance of the duty involved. By enacting the child abduction statute, the State legislature sought to protect the welfare of the children involved in custody disputes by encouraging compliance with court orders of custody, thus helping to establish a stable environment for the children. The statute also seeks to protect the rights of the custodial parent under the decree.

Defendant's duty to comply with the court order of custody by surrendering custody of the children serves these same interests. The court rendering the custody order has already determined that giving custody to the mother is in the best interests of the children. Therefore, if defendant performed his duty by giving up custody of

the children to the mother, the best interests of the children would be served. In addition, the rights of the custodial parent under the decree can only be protected if the noncustodial parent is under a duty to comply with the custody decree and surrender his or her equal rights to custody.

We also find support for our asserting jurisdiction over the facts of this case in that the detrimental effects of defendant's omission or failure to comply with the court order are felt only in Illinois. The intentional violation of a valid Illinois court order of custody has the detrimental effect of frustrating the power of the Illinois court and of denying an Illinois resident the possession of children to which she has been awarded the legal custody. We question whether any other State would have such interests in pursuing defendant's allegedly unlawful conduct. Illinois' interest in protecting the viability of its judgments and the rights of its residents to custody fully support the broad jurisdictional reach of section 1–5(c).

In reaching this conclusion, we are not unmindful of the need to assure fundamental fairness to individuals outside the State who may not have a reasonable opportunity to become aware of the criminal laws of Illinois. Defendant, in particular, has made much of the fact that his alleged conduct was not made criminal until 1984 when he had not been in Illinois for seven years. Nevertheless, for present purposes, it is sufficient to observe that no possibility of unfairness to defendant will arise merely because he was in Ohio when his conduct became criminal, even assuming defendant was not aware of the child abduction statute. As a necessary element of child abduction, the State must prove defendant intentionally violated the terms of the court order of custody. That violation subjects defendant to the court's contempt power of punishment. Thus, if defendant did intentionally violate the custody order, he cannot claim he was unaware

that he might be severely punished if he ever came within the grasp of Illinois. Therefore, given the substantial interests involved in the prohibition of child abduction, and given the fault or wrongdoing inherent in defendant's alleged conduct, it would not be fundamentally unfair to hold defendant criminally liable for that conduct.

A growing number of States are in accord with the holding we make today. Alaska, Wyoming and Texas have asserted criminal jurisdiction in child abduction cases with facts very similar to those presented in this case. (*Wheat v. State* (Alaska App. 1987), 734 P.2d 1007; *Rios v. State* (Wyo. 1987), 733 P.2d 242; *Roberts v. State* (Tex. Crim. App. 1981), 619 S.W.2d 161.) In all three cases, the courts held that the respective States had criminal jurisdiction to prosecute the defendant for failing to return a child to the custodial parent even though, at the time the crime was committed, the defendant was outside of the State. Indeed, in *Rios* the defendant had *never* been in the State until he was arrested. Although these cases are not controlling and involve different statutory language, they are persuasive in that they demonstrate that a State's criminal jurisdiction over situations such as present here is limited only by statutory language.

On the other hand, the two cases cited by defendant, *State v. McCormick* (Minn. 1978), 273 N.W.2d 624, and *People v. Gerchberg* (1982), 131 Cal. App. 3d 618, 181 Cal. Rptr. 505, are not persuasive. In *McCormick*, the Minnesota Supreme Court refused to find jurisdiction in a child abduction case involving conduct outside its borders. The Minnesota statute on criminal jurisdiction provided in pertinent part that jurisdiction is found in Minnesota if "[b]eing without the state, he intentionally causes a result within the state prohibited by the criminal laws of this state." (Minn. Stat. §609.025 (1978).)

The Minnesota court's ruling, however, was based in part on the questionable conclusion that assertion of jurisdiction in such a case might offend the sixth amendment of the United States Constitution. In support of this conclusion, the court relied on a single case decided by a New York court in 1855. The court also found other infirmities in the statute, in particular its unfounded discrimination in penalties between unlawful detention committed outside the State (felony) and unlawful detention committed inside the State (misdemeanor). Although the Minnesota court found persuasive the arguments for approving jurisdiction in Minnesota based on that State's interest in the subject of the litigation arising both from the significant contacts of the custodial parent and the children with Minnesota, and from the violation of a Minnesota court order, the court concluded that traditional restraint in prosecuting offenses committed outside the borders of a State was broadly accepted and refused to be the first to shrug off that restraint.

In *Gerchberg*, the California court of appeals declined to assert jurisdiction in a child abduction case where the child's lawful custody was in California and the detention occurred in New York. In reaching its conclusion, however, the court relied on a jurisdictional statute that had previously been interpreted by the California Supreme Court to require for jurisdiction the commission of acts in California amounting to an attempt. The parties had stipulated that the noncustodial parent did not even form the intent to detain the child in New York until several weeks after the child had been visiting in New York.

With due deference to the rulings of our sister States, we need not accept for Illinois the restraints imposed by the courts of Minnesota and California. (The California legislature apparently agrees. It responded to the holding in *Gerchberg* by amending California's stat-

ute so that the State had jurisdiction over child abduction offenses whether the "intent to commit the offense is formed within or without the state." (48 Cal. Penal Code §279(e) (West Supp. 1987).)) We find *McCormick* and *Gerchberg* unpersuasive and decline to follow them.

Finally, we find meritless defendant's arguments that the sixth amendment of the United States Constitution and article I, section 8, of the Illinois Constitution limit a State's criminal jurisdiction to conduct within its borders. The sixth amendment provides that in all criminal prosecutions the accused shall enjoy the right to a trial by an impartial jury "of the State and district wherein the crime shall have been committed." (U.S. Const., amend. VI.) Article I, section 8, of the Illinois Constitution provides that in criminal prosecutions the accused shall have the right to a trial by an impartial jury "of the county in which the offense is alleged to have been committed." (Ill. Const. 1970, art. I, §8.) Both of the above-quoted provisions deal with venue rather than jurisdiction. (See *Travis v. United States* (1961), 364 U.S. 631, 633-34, 5 L. Ed. 2d 340, 343, 81 S. Ct. 358, 360; *People v. Allen* (1952), 413 Ill. 69, 74 (defining venue as a "fundamental concept of trial by jury in the county where the alleged crime occurred"); W. LaFave & J. Israel, 2 Criminal Procedure §16.1, at 334-41 (1984).) Venue must be distinguished from jurisdiction. Jurisdiction is the authority or power of a court to try a case, while venue concerns only the place where the case may be tried. The sixth amendment and article I, section 8, of the Illinois Constitution therefore place no limits on the criminal jurisdiction of Illinois. In any case, the offense based on an omission to perform a duty imposed by the law of this State is deemed under section 1—5(c) to have been committed wholly within this State. Ill. Rev. Stat. 1985, ch. 38, par. 1—5(c).

Having found that Illinois has criminal jurisdiction under section 1—5(c), we conclude that the child abduction counts were improperly dismissed by the trial court. We need not decide whether jurisdiction also lies under section 1—5(a) (Ill. Rev. Stat. 1985, ch. 38, par. 1—5(a)).

For the reasons stated, the appellate court is affirmed and this cause is remanded to the circuit court of Du Page County for further proceedings.

*Appellate court affirmed;*
*cause remanded.*