**STATE**

v.

**Jeffrey KANE.**

**No. 92–117–M.P.**

Supreme Court of Rhode Island.

June 9, 1993.

**1362**

Jeffrey Pine, Atty. Gen., Annie Goldberg, Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld, Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

FAY, Chief Justice.

This matter is before us on the petition for certiorari of the defendant, Jeffrey Kane, from the Superior Court's denial of his motion to dismiss a pending charge of child snatching in violation of G.L.1956 (1981 Reenactment) § 11–26–1.1, as amended by P.L.1989, ch. 542, § 6, and the imposition of a no-contact order as a condition of his bail. The Superior Court trial has been stayed during this appeal. The facts available are those discernible from the trial justice's decision.

Pursuant to a May 12, 1989 Family Court consent order, No. 89–1595, defendant and Denise Palermo received joint custody of their minor child, Jeffrey Kane (Jeffrey). Physical custody of the child was with the mother from 12 p.m. Sundays until 3 p.m. Wednesdays. Jeffrey resided with his father from 3 p.m. Wednesdays to Sundays at noon.

The trial justice stated that on Sunday, November 20, 1991, defendant refused to return Jeffrey to his mother in violation of the consent order. The defendant retained custody of Jeffrey in Lawrence, Massachusetts. The defendant was ultimately arrested in Texas, where he fled with Jeffrey sometime after refusing to return him to his mother. The defendant was extradited to Rhode Island and was charged with violating the Rhode Island child-snatching statute, § 11–26–1.1. Bail was set on November 18, 1991, and as a condition defendant was prohibited from having any contact with Jeffrey.

On November 26, 1991, defendant moved to dismiss for lack of subject-matter jurisdiction, arguing that the matter was properly within the Family Court's exclusive jurisdiction. The trial justice denied defendant's motion to dismiss, noting that the case was not within the Family Court's jurisdiction. The trial justice stated that the Superior Court was not attempting to award custody or to modify a custody order, areas over which the Family Court retains jurisdiction. *See Jordan v. Jordan,* 586 A.2d 1080, 1083 (R.I.1991). Rather the Superior Court was exercising its subject-matter jurisdiction over the criminal act of child snatching that occurs after a custody order has been issued. The trial justice declared that her ruling comported with both state and federal statutes concerning child-custody matters. The defendant petitioned this court to review both the trial justice's denial of his motion to dismiss for lack of subject-matter jurisdiction and the denial of his motion to remove the no-contact order.

We first address defendant's contention that the Superior Court lacked subject-matter jurisdiction. The defendant asserts that any violation of the child-snatching statute occurred outside Rhode Island

and that the criminal statute does not extend subject-matter jurisdiction to extraterritorial acts. Jurisdiction over extra-territorial offenses, he argues, must therefore depend upon a long-arm statute. The defendant claims that the statute that creates the crime of child snatching does not implicitly act as a long-arm statute.

The state argues that the language of the child-snatching statute is clear on its face with regard to extraterritorial jurisdiction. It claims that the statute's application to acts committed "within or without the state" provides the Superior Court with jurisdiction to hear violations of § 11–26–1.1.

Rhode Island's child-snatching statute, § 11–26–1.1, states in pertinent part:

"Any person who intentionally removes, causes the removal of, or detains any child under the age of eighteen (18) years whether *within or without the state of Rhode Island* with intent to deny another person's right of custody under an existing decree or order of [the] Rhode Island family court shall be guilty of a felony, and upon conviction thereof shall be punished by imprisonment for a term not more than two (2) years or a fine of not more than ten thousand dollars ($10,-000) or both." (Emphasis added.)

We find that the Legislature's intent to extend § 11–26–1.1 to extraterritorial acts is clear on the face of the statute. Our holding is consistent with statutory-construction precepts and general common-law principles.

■■■■ This court is responsible for determining the Legislature's intent on questions of statutory construction. *In the Matter of Almeida*, 611 A.2d 1375, 1382 (R.I.1992). Our analysis begins with the wording of the statute. We must "read the language so as to effectuate the legislative intent behind its enactment." *Gilbane Co. v. Poulas*, 576 A.2d 1195, 1196 (R.I.1990). "If the language is clear on its face, then the plain meaning of the statute must be given effect." *Id.* The statute before us does not require a search for the discernment of legislative intent. We believe the language is unambiguous. The defendant intentionally violated an existing Rhode Island custody decree by retaining custody outside this state. Section 11–26–1.1 criminalizes the act of child snatching if the act violates a Rhode Island Family Court order, whether it occurs within or *without* the State of Rhode Island. The Superior Court, therefore, unequivocally retains subject-matter jurisdiction.

This court has not previously entertained the jurisdictional issue presented in this appeal. We find it instructive to examine other courts' treatment of this issue and relevant uniform statutes to ensure that our holding conforms to the policies underlying the laws regarding jurisdiction that are adopted in this and other states.

The application of § 11–26–1.1 to acts committed outside Rhode Island is consistent with common-law principles. In the absence of a statutory provision extending a court's reach over acts committed outside a state, other jurisdictions have relied upon general long-arm statutes. To determine the reach of a long-arm statute, the objective territorial theory provides that a crime that is based upon an omission when there is a duty to act is committed in the state where the act should be performed. The objective territorial theory permits a court to retain jurisdiction over extraterritorial custodial violations. *See Wheat v. State*, 734 P.2d 1007, 1011 (Alaska Ct.App.1987); *State v. Costa*, 558 So.2d 525, 526 (Fla. 1990); *People v. Caruso*, 152 Ill.App.3d 1074, 1080–81, 105 Ill.Dec. 821, 504 N.E.2d 1339, 1342 (1987), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988); *Roberts v. State*, 619 S.W.2d 161, 164 (Tex. Crim.App.1981).[1] The theory extends the

1. Our research reveals that general jurisdictional statutes vary from state to state. Different statutes have led to some disagreement about whether a general jurisdictional statute and the child-snatching statute may be used to establish criminal jurisdiction over custodial conduct. *See, e.g., People v. Gerchberg*, 131 Cal.App.3d 618, 181 Cal.Rptr. 505 (1982); *State v. Cochran*, 96 Idaho 862, 538 P.2d 791 (1975); *State v. McCormick*, 273 N.W.2d 624 (Minn.1978). We wish to note that we find these cases unpersuasive because the statutory language construed differs significantly from the terms of the Rhode Island statute.

reach of criminal statutes because "to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds." *United States v. Bowman,* 260 U.S. 94, 98, 43 S.Ct. 39, 41, 67 L.Ed. 149, 151 (1922).

The Rhode Island child-snatching statute does not rely on a general long-arm statute for its jurisdictional force. We find that the statute is nevertheless a suitable method of creating subject-matter jurisdiction. In discussing the objective territorial theory, Justice Holmes observed that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power." *Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735, 738 (1911). We agree with the trial justice that the Legislature has provided that the crime of child snatching can never occur absent a valid custody order rendered within this state. Thus § 11–26–1.1 applies to acts that necessarily produce a detrimental effect within Rhode Island. *But see State v. Halstead,* 414 A.2d 1138, 1144 (R.I.1980) (Superior Court lacks jurisdiction if crime occurred beyond its territorial boundaries).

Superior Court jurisdiction over child snatching in violation of a custody order reinforces the purpose of complementary, uniform civil-jurisdiction legislation. Enactment of § 11–26–1.1 was preceded by the Legislature's adoption of the Uniform Child Custody Jurisdiction Act (UCCJA), G.L.1956 chapter 14 of title 15, as enacted by P.L.1978, ch. 185, § 1. "The act, addressing the problem of the 'interstate' child, evinces a legislative intent to minimize jurisdictional competition and conflict so that custody decisions are rendered in the state best able to protect the welfare of the child." *Paolino v. Paolino,* 420 A.2d 830, 835 (R.I.1980). The UCCJA was intended "to stem the proliferation of jurisdiction in custody litigation" and avoid relitigation. *Id.* The Supreme Court observed that a number of states have refused to enact the UCCJA and that others

have modified it. *Thompson v. Thompson,* 484 U.S. 174, 181, 108 S.Ct. 513, 517, 98 L.Ed.2d 512, 521 (1988). As a consequence "noncustodial parents still had reason to snatch their children and petition the courts of any number of haven States for sole custody." *Id.*

Seeking to remedy the inapplicability of full-faith-and-credit requirements to custody determinations, Congress adopted the Parental Kidnaping Prevention Act of 1980, (PKPA), 28 U.S.C. § 1738A. The PKPA and the UCCJA pertain to the Family Court's exercise of jurisdiction over custody matters. The PKPA was intended to limit kidnaping by a parent who lost a custody battle in one state and attempted to relitigate the issue in another state. *Thompson,* 484 U.S. at 180–81, 108 S.Ct. at 517, 98 L.Ed.2d at 521. The PKPA was designed to prevent such child snatching by requiring states to give full faith and credit to another state's valid custody decree. *Id.* at 181–82, 108 S.Ct. at 517, 98 L.Ed.2d at 521–22.

The UCCJA and the PKPA pertain to the Family Court's exercise of jurisdiction over custody determinations. Once a custody order is in effect, however, states remain free to implement criminal penalties for child snatching. The Legislature filled that void when it criminalized the act of child snatching. Our review of the statutory language and the legislative intent manifests that the criminal act of child snatching in violation of a valid Rhode Island Family Court order is within the Superior Court's subject-matter jurisdiction.

██ We next address defendant's claim that the trial justice abused her discretion in imposing the no-contact order as a condition of bail. At a hearing on the motion to dismiss, the trial justice entertained defendant's motion to modify the no-contact order. The defendant claimed that the bail condition was contrary to the Family Court order that gave defendant joint custody of Jeffrey. The trial justice refused to lift the prohibition. At a hearing two weeks later the trial justice indicated that she would continue the bail matter until the Family

Court had the opportunity to review the case and determine whether visitation rights should be allowed.

We believe that the trial justice did not commit error by restricting the defendant's bail. In a criminal trial the trial justice has the authority to impose any conditions on a defendant's bail that he or she believes necessary to preserve public safety and to ensure that a defendant will return to court. *See* G.L.1956 (1981 Reenactment) § 12–13–1.3(a), as enacted by P.L.1992, ch. 430, § 1. Moreover, the trial justice here allowed the defendant to request the Family Court to determine the extent of the defendant's visitation rights before she reviewed the no-contact order.

Accordingly the petition for certiorari is denied. The writ heretofore issued is quashed, and the case is remanded to the Superior Court with our decision endorsed thereon.

LEDERBERG, J., did not participate.