[No. H026467. Sixth Dist. Nov. 17, 2004.]

THE PEOPLE, Plaintiff and Respondent v.
DRAGISA LAZAREVICH, Defendant and Appellant.

COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

OPINION

**MIHARA, J.—** ■ After a court trial held on September 12, 2003, the trial court found defendant Dragisa Lazarevich guilty of two counts of withholding a minor child and maliciously depriving the lawful custodian of her right to custody between January 15, 1992, and June 7, 1995, in violation of Penal Code section 278.5.[1] In the context of section 278.5, which is located in the Child Abduction chapter of our Penal Code, " 'withholds' means retains physical possession of a child whether or not the child resists or objects." (§ 277, subd. (g).)

The only issue presented in this appeal is whether California may assert criminal subject matter jurisdiction over defendant Dragisa Lazarevich's conduct where the defendant, in violation of a court order of this state, harbored his children outside of this country and failed to return them to the custodial parent, their mother, who is a resident of California. In that regard, defendant contends (1) international law forbids California from asserting subject matter jurisdiction for conduct occurring exclusively on foreign land, (2) this prosecution violates due process because all conduct from 1992 to 1995 occurred outside the United States, and (3) prosecuting him for conduct exclusively in another country interferes with the sole authority of the federal government to conduct foreign affairs.

■ For the reasons stated below, we conclude that defendant's acts of harboring his children outside of California and failing to return them to the custodial parent in violation of a California custody order subjected defendant to prosecution in California and that the federal Constitution does not place limits on criminal jurisdiction in California under the facts of the case before us.

## I. Procedural History

On July 7, 1989, the Los Angeles County Superior Court made the following custody order as part of its "Judgment of Dissolution of [the] Marriage" between defendant Dragisa Lazarevich and Shayna Lazarevich: "Petitioner [Shayna Lazarevich] and Respondent [Dragisa Lazarevich] shall share joint legal and physical custody of the minor children of the parties, [S.] LAZAREVICH, born [in] 1982 and [A.] LAZAREVICH, born [in] 1985.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

The primary residence of the children shall be with Petitioner. Respondent shall have physical custody of the children three (3) weekends out of every four (4) from Friday evening until Sunday evening." The custody order included additional provisions related to summer vacations and holidays that are not relevant to this appeal. Defendant does not dispute the validity of the judgment of dissolution.

On September 15, 1999, defendant Dragisa Lazarevich was charged with two counts of taking, enticing away, keeping, withholding, or concealing a minor child. (§ 278.5). The information alleged that the violations took place between October 1, 1989, and June 8, 1995. After the trial court granted defendant's motion to dismiss the information on double jeopardy grounds, the prosecution appealed to this court. In *People v. Lazarevich* (2001) 95 Cal.App.4th 416 [115 Cal.Rptr.2d 419], we held that defendant's conviction in Serbia for the kidnapping and detention of his children between October 1, 1989, and January 15, 1992, after he took the children from California while they were in the mother's custody, did not preclude California from prosecuting defendant for the continued retaining and concealing of his children (§ 278.5) between January 15, 1992, and June 7, 1995, when the children were recovered by Serbian officials and returned to their mother. (*Id.* at pp. 420–426.)[2] Upon remand, the information was "amended on its face" to allege that the violations in question took place between January 15, 1992, and June 7, 1995. Thereafter, defendant moved to dismiss the information on the ground that the superior court lacked jurisdiction concerning conduct that occurred exclusively in another country. After this motion was denied, defendant waived jury trial. After a court trial, defendant was found guilty as charged in the amended information. He was sentenced to three years in state prison with credit for 751 actual days served plus 374 days of conduct credit. On appeal defendant renews his claim that the United States Constitution prohibits California from prosecuting him for conduct that occurred exclusively in another country.

## II. Factual Summary[3]

Defendant and Shayna Lazarevich married in 1982. They were divorced in May 1989 in Los Angeles County. In the judgment of dissolution, Shayna

---

[2] We have taken judicial notice of the record on appeal in case No. H021290, defendant's prior appeal in this action.

[3] Our factual summary is taken from the facts set forth in our prior opinion in this action and from evidence produced at defendant's court trial after we remanded his case to superior court.

was given physical custody of their two children and defendant was given visitation rights. In September 1989, Shayna moved from Los Angeles to Santa Cruz so that she could attend college.

Defendant was entitled to weekend visits. On September 29, 1989, defendant told Shayna that he was driving from Los Angeles to visit the children from September 30 through October 1. Defendant picked up both children the morning of September 30 and stayed in a hotel for the visitation. Defendant was expected to return both children to Shayna on the evening of Sunday, October 1, pursuant to the Los Angeles County court order regarding custody of the children. However, defendant never returned with the children and Shayna could not find them.

A police investigation revealed that defendant, using fraudulently obtained passports, had left the United States with the children and had returned to his home country of Yugoslavia. The Santa Cruz County District Attorney filed a criminal complaint against defendant and obtained a warrant for his arrest, and the United States Attorney for the Northern District of California instituted proceedings against defendant for unlawful flight to avoid prosecution.

In 1989, Shayna traveled to Serbia,[4] the area of Yugoslavia defendant came from. Shayna testified at the court trial that she found defendant in the Serbian city of Nis, but she left after two weeks without seeing her children. In 1990, Shayna returned to Serbia and saw the children and defendant. Shayna's daughter was attending elementary school, and Shayna and defendant agreed that the children would remain in Serbia for the school year and then would return to Shayna's care in the summer. However, the day after this agreement was reached, Shayna could not find defendant or the children.

On September 13, 1991, and again on September 21, 1991, Shayna saw her children in Nis pursuant to arranged supervised visits. Shayna had a second supervised visit with her children in March 1992. At some point after that, when Shayna again could not locate her children, she gave a television interview in Belgrade that included her "plea for assistance" in locating her children.

In 1991, the Serbian officials began a criminal proceeding against defendant for taking and detaining the children from the lawful custody of their

---

[4] Serbia is a republic in Yugoslavia. In 1989, Yugoslavia still was a unified country consisting of six republics, including Serbia. Kosovo is in the Republic of Serbia.

mother in violation of article 116, paragraph 1, of the Criminal Law of the Republic of Serbia.

On October 22, 1991, the Serbian government found defendant guilty of its charge and sentenced defendant to pay a fine or spend seven days in custody if the fine was not paid.

Defendant concealed the children in Serbia until June 7, 1995, when Serbian authorities, acting under the direction of President Milosevic, recovered the children in Yugoslavia. The children were turned over to diplomatic representatives of the United States when American citizens were evacuated before the Kosovo war, and they subsequently were reunited with their mother on June 8, 1995.

Defendant eventually was extradited to the United States, and in 1997, he was convicted in federal court of passport fraud. Upon his release from federal custody, he left the United States pursuant to a voluntary deportation. In December 1997, he returned to Santa Cruz and soon thereafter was arrested near Shayna's home. He was prosecuted and convicted of illegal reentry into the United States; while serving his federal sentence on that charge, he made a demand in the instant case pursuant to section 1381. He was arraigned in Santa Cruz County on this case on September 15, 1999.

In the court trial that followed remand after our double jeopardy decision in defendant's case in *People v. Lazarevich*, *supra*, 95 Cal.App.4th 416, defendant testified that Shayna "began neglecting the kids about five, six months before she file[d] for divorce." He said she "started giving child custody to almost everybody," moved often, and had the children change schools three times. He said Shayna once left both children with him in 1989 when they were ill and that, while he was caring for them, Shayna decided to go to France to study. She left the children with him for about three months while she traveled abroad. Shortly after she returned from France, Shayna moved to Santa Cruz with the children. Defendant testified he took the children with him and returned to Yugoslavia because Shayna was neglecting the children and he was protecting them. He admitted that he never called Shayna to talk to her about his decision before he left the country with the children.

Defendant also admitted that the children lived with him from the latter part of 1993 until they were taken from him in June 1995. He said the reason he did not return the children to Shayna during that period because the children "refused to go" and the social workers in Yugoslavia "didn't want it.

They suggested the kid[s] would be hurt badly." Defendant testified that, between 1989 when he took the children and 1995 when the children were taken from him, he was not hiding the children from Shayna although he was hiding the children from the "state security" of Yugoslavia.

The trial court noted that the defense had not produced any post-1989 order that would have any effect on defendant's mens rea but there was the judgment of the court of Serbia that found that defendant was culpable of taking and retaining the children and that "[a]bsent some further evidence, which apparently is not out there, he's still in the same status."

The trial court found that, during the period following defendant's criminal conviction in Serbia, he "was withholding the children from mother. He knew how to find her. He knew how to make arrangements for her to see the children independent of custody disputes, in other words, she could have anything approaching parental time with the children, and I have no evidence that that happened." The trial court found defendant "guilty of violation of Penal Code Section 278.5, as a felony, for his conduct following his conviction in Serbia."

## III. Discussion

■ Defendant contends California courts lack subject matter jurisdiction to prosecute him for concealing his children in order to deprive the lawful custodian of a right of custody between January 15, 1992, and June 7, 1995, because "the United States Constitution prohibited California from prosecuting [him] for conduct occurring exclusively in another country." The trial court disagreed and found "it is appropriate to constitutionally allow California to enforce its orders through criminal proceedings." For the reasons stated below, we agree with the trial court that California's criminal jurisdiction is broad enough to reach the conduct of defendant occurring outside California's territorial limits in violation of our statute that punishes those who conceal, keep, or withhold a child with the intent to maliciously deprive a lawful custodian who is a California resident of a right to custody, and that the federal Constitution does not place limits on criminal jurisdiction in California under the facts of the case before us.

"Subject matter jurisdiction is conferred by constitutional or statutory law. [Citations.] [Our State] Supreme Court has held, 'Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in a particular way.' [Citations.] By contrast, the lack of subject matter jurisdictions means the entire absence of power to hear or determine a case; i.e., an absence of *authority* over the subject matter. [Citations.] Where the evidence is not in

dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review. [Citations.]" (*Guardianship of Ariana K.* (2004) 120 Cal.App.4th 690, 701 [15 Cal.Rptr.3d 817].)

■ Generally, a person cannot be punished in California for crimes committed outside California unless he or she has committed acts in California amounting to an attempt to commit the crime. (§§ 27, 778.) However, since 1984, California has provided an exception to the general rule in child abduction cases.

■ From January 15, 1992, to June 7, 1995, the time period during which defendant stands convicted of withholding his children from his wife, who was the California custodial parent, California had statutory provisions that extended its reach over acts committed outside California. Specifically, the California Legislature had enacted a statutory provision that granted California jurisdiction to prosecute defendant for the charged violations of section 278.5 pursuant to former section 279, subdivision (e)'s provision that, "[p]ursuant to Sections 27 and 778, violation of Section . . . 278.5 is punishable in California, whether the intent to commit the offense is formed within or without of the state, if . . . *a person granted access to the minor child by a court order[] is a resident*. . . ." (Former § 279, subd. (e), italics added; see current § 279, subd. (c).)[5]

■ The purpose of the italicized portion of former section 279 pertinent to our analysis in this case was to establish a broad jurisdictional basis for the prosecution in California of offenses involving the interests of persons in California. The former statute accurately reflected the holding of *Strassheim v. Daily* (1911) 221 U.S. 280, 285 [55 L.Ed. 735, 31 S.Ct. 558], that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power." Accordingly, the reach of California's criminal jurisdiction under former sections 279 and 278.5 is not limited by strict territorial considerations.

■ In this case, pursuant to a California custody order, defendant had an affirmative duty to return his children to his wife on the Sunday evening of the weekend he exercised his right to weekend visitation privileges in the

---

[5] As relevant, current section 279 provides that a violation of section 278.5 "by a person who was not a resident of, or present in, this state at the time of the alleged offense is punishable in this state, whether the intent to commit the offense is formed within or outside of this state, if any of the following apply: [¶] . . . [¶] (c) A lawful custodian or a person with a right to visitation is a resident of this state at the time the child was taken, enticed away, kept, withheld, or concealed."

summer of 1989. Defendant failed to perform that affirmative duty on October 1, 1989, and his failure to perform his duty under the court order to return the children by withholding them from their mother is " 'continuous in nature, and continue[s] for so long as the minor child is [withheld,] concealed or detained.' " (*People v. Love* (1988) 203 Cal.App.3d 1505, 1508 [251 Cal.Rptr. 6]; see also current § 279.1.) California's jurisdiction over defendant is based upon the state's interests in the performance of the duty that was imposed by a California court order but not fulfilled until June 7, 1995, when the children were recovered by Serbian officials and returned to their mother.

■ "[T]he objective territorial theory [of subject matter jurisdiction] provides that a crime that is based upon an omission when there is a duty to act is committed in the state where the act should be performed. The objective territorial theory permits a court to retain jurisdiction over extraterritorial custodial violations. [Citations.] The theory extends the reach of criminal statutes because 'to limit their *locus* to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity . . . .' (*United States v. Bowman*, 260 U.S. 94, 98 [67 L.Ed. 149, 43 S.Ct. 39] (1922)." (*State v. Kane* (R.I. 1993) 625 A.2d 1361, 1363–1364, fn. omitted.) Therefore, the period that defendant withheld his children from their mother in violation of the California court order after his 1991 conviction in Serbia for taking and concealing constituted a prosecutable offense *in California.* We conclude that, under former section 279, the *location* of any conduct that might be an element of the offense of withholding a child and maliciously depriving a lawful custodian who is a resident of California of a right to custody (§ 278.5) based upon an omission to perform a duty *is irrelevant.* (See, e.g., *State v. Kane, supra,* 625 A.2d 1361, 1363–1364; *People v. Caruso* (1987) 119 Ill.2d 376 [116 Ill.Dec. 548, 519 N.E.2d 440, 443]; *Trindle v. State* (1992) 326 Md. 25 [602 A.2d 1232, 1235–1236].)

■ "In California, the Uniform Child Custody Jurisdiction and Enforcement Act [UCCJA] (Fam. Code, § 3400 et seq.) governs custody matters," and it "is the exclusive method of determining subject matter jurisdiction in California custody cases including international custody disputes. [Citations.]" (*Guardianship of Ariana K., supra,* 120 Cal.App.4th at p. 702.) Because some states refused to enact the UCCJA and others modified it, Congress sought to remedy the inapplicability of full faith and credit requirements to custody determination by adopting the Parental Kidnapping Prevention Act of 1980 (PKPA) 28 United States Code section 1738A. "The UCCJA and the PKPA pertain to the Family Court's exercise of jurisdiction over custody determinations. *Once a custody order is in effect, however, states remain free to implement criminal penalties for child snatching.*" (*State v. Kane, supra,* 625 A.2d at p. 1364, italics added.) Here, as in Rhode Island, our state Legislature "filled that void" when it criminalized the act of

withholding a child and maliciously depriving the lawful custodian of a right to custody. Our review of the statutory language and the legislative intent in question has convinced us that the criminal act of withholding a child and maliciously depriving the custodial parent of a right to custody in violation of a valid California Family Court order was within the Superior Court's subject matter jurisdiction no matter where on the globe the child is physically being withheld from the custodial parent who resides in California. (*Ibid.*; see also *People v. Smith* (2004) 32 Cal.4th 792, 803 [11 Cal.Rptr.3d 290, 86 P.3d 348] [persons who incur legal obligation in California cannot escape prosecution for failure to perform that obligation on ground that they no longer are California residents when performance due].)

■ However, defendant claims there are federal constitutional limits on California's statutory grounds for jurisdiction. Specifically, he contends international law and the due process clause of the Fourteenth Amendment require some criminal activity to occur or be contemplated to occur within the state. Defendant also contends California's attempt to prosecute conduct occurring on foreign soil interferes with the exclusive authority of the federal government to conduct foreign policy. For the reasons stated below, we conclude federal law places no limits upon California's statutory jurisdiction to prosecute defendant for withholding his two children in Serbia from January 15, 1992, to June 7, 1995, when his wife Shayna, who is a resident of California, had been granted primary custody of those two children by a lawful California court order.

■ In essence, we already have addressed defendant's claim that "international law forbids asserting jurisdiction for conduct occurring exclusively on foreign land." We resolved this issue by finding that California's exercise of jurisdiction of defendant was *reasonable* because defendant's conduct outside California had a *substantial* effect within California and *was intended to have consequences within California* and *did produce detrimental effects within California.* (See Rest.3d, Foreign Relations Law of the United States, §§ 402(1)(c), 403; *Strassheim v. Daily, supra,* 221 U.S. at p. ·285.) ■ Under the "objective territorial theory" of subject matter jurisdiction, we conclude California has jurisdiction of defendant's act of withholding his children in Serbia because his failure to abide by a valid California child custody order constitutes an act or omission outside of the country that necessarily produced a substantial detrimental effect in California, and defendant obviously knew that his withholding his children from his former wife produced territorial effects in California.

We similarly are not persuaded by defendant's next claim that the prosecution in this "violates due process because all conduct from 1992 to 1995 occurred outside the United States." Since defendant

was a party to the dissolution and child custody order that set forth his custody visitation schedule and since California law at the time in question contained a specific criminal statute which authorized California to assume jurisdiction based upon conduct and/or effect (former § 279, subd. (e)), we are convinced defendant received "fair warning" (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472 [85 L.Ed.2d 528, 105 S.Ct. 2174]) that he could be punished in California for his acts in violation of a valid California custody order that produced substantial harm to a California resident even though those acts were committed outside of California, "if the state should succeed in getting him within its power." (*Strassheim v. Daily*, *supra*, 221 U.S. at p. 285.)

 We also find no merit to defendant's contention that prosecuting him for conduct "wholly in another country interferes with the sole authority of the federal government to conduct foreign affairs." In *Guardianship of Ariana K.*, *supra*, 120 Cal.App.4th 690, the father argued that the trial court had no subject matter jurisdiction to decide a guardianship dispute regarding his child who had been removed to Greece because the child's grandmother and maternal aunt failed to invoke their rights under the Hague Convention. In determining that California did have subject matter jurisdiction over the matter, the court relied upon the fact that "[a] treaty may be not be construed as preempting state law or any court procedures in the absence of a clear intent to do so. [Citations.]" (*Id.* at p. 706.) Similarly, defendant's contention to the contrary, nothing in the United States Constitution's articles that vest the federal government exclusive jurisdiction of foreign policy and the United States' relations with foreign countries (U.S. Const., art. I, §§ 8, 10; *id.,* art. II, § 2) acts to deprive California of subject matter jurisdiction over conduct that violates a valid California custody order. In fact, as the People correctly note, the federal child-stealing statute permits prosecution of defendants for their offenses committed outside the United States (18 U.S.C., § 1204;[6] see also *United States v. Amer* (2d Cir. 1997) 110 F.3d 873, 884, fn. 5), and we find nothing in the pertinent language of 18 United States Code section 1204 that can be construed as intentionally preempting state law.

For all the reasons stated above, we conclude there is no merit to defendant's claim that the trial court lacked subject matter jurisdiction in this case.

---

[6] Title 18 United States Code section 1204(a) provides, in pertinent part, that anyone who "removes a child from the United States, . . . or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both."

## IV. Disposition

The judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 2005. Brown, J., was of the opinion that the petition should be granted.