996 So.2d 246 (2008)
Neely KOUNTZE, Appellant,
v.
Edward H. KOUNTZE, Appellee.
No. 2D07-4881.
District Court of Appeal of Florida, Second District.
December 12, 2008.
*247 Donna Waters Romero and Mara Shlackman of Law Offices of Carlos A. Velasquez, P.A., Fort Lauderdale, for Appellant.
Andrew G. Tretter of Quarles & Brady, LLP, Naples, for Appellee.
EN BANC
ALTENBERND, Judge.
Neely Kountze (Neely) appeals an order denying his motion to dismiss the complaint of his cousin, Edward Kountze (Edward), for lack of personal jurisdiction. Edward sued Neely for recording a telephone conversation between the two without Edward's permission in violation of the Florida Security of Communications Act (the Act). See § 934.03, Fla. Stat. (2002). Neely recorded the call from his office in Nebraska. We reverse because section 48.193(1)(b), Florida Statutes (2002), does not provide a basis for personal jurisdiction over a foreign defendant who recorded the call from his Nebraska office without engaging in any actions inside Florida. In so holding, we recede from our decision in Koch v. Kimball, 710 So.2d 5 (Fla. 2d DCA 1998).
In Koch, this court considered a similar claim. Id. at 6. We held that a Florida court possessed personal jurisdiction over a nonresident defendant who recorded a telephone conversation with a person in Florida because the recording of the conversation was the commission of a tortious act within this state for purposes of section 48.193(1)(b). We decided in Koch that the defendant's "interception" of the telephone call statutorily "occurred" at the point of origin in Florida and not at the point of reception and recordation in the foreign state. We concluded that the act of interception under the Act was sufficient to constitute the commission of a tortious act in Florida and thus was sufficient to establish long-arm jurisdiction under section 48.193(1)(b). Id.
*248 Our holding in Koch failed to provide a strict construction of section 48.193(1)(b). Contrary to our reasoning in Koch, we now conclude that a Florida statute that creates a private cause of action for the nonconsensual interception of a communication originating within Florida cannot transform a defendant's out-of-state act of recording that communication, standing alone, into a "tortious act within this state" for jurisdictional purposes. In so holding, we distinguish cases in which a conversation directed into Florida over an interstate telephone call was defamatory, fraudulent, or otherwise an element of a traditional intentional tort under the common law.
It is clear that the trial court in this case simply followed our ruling in Koch. Because Edward relied on our opinion in Koch as the exclusive basis for jurisdiction in the trial court, we reverse and remand this case. If Edward believes he can allege another statutory basis for long-arm jurisdiction under section 48.193 in good faith, he should be permitted to do so.

I. THE FACTS IN THIS CASE
We derive the following facts from the affidavits in support of Neely's motion to dismiss and the deposition transcripts and records Edward submitted in opposition to the motion to dismiss. See Wendt v. Horowitz, 822 So.2d 1252, 1254 (Fla.2002). Neely and Edward are first cousins. Neely lives in Nebraska, Edward in Colorado. The two men are board members of the Gilbert M. and Martha H. Hitchcock Foundation, a Nebraska charitable foundation that has been experiencing disputes among its board members. See generally Gilbert M. & Martha H. Hitchcock Found. v. Kountze, 272 Neb. 251, 720 N.W.2d 31 (2006). Edward and Neely appear to be on opposite sides of the dispute.
Edward's father has a home in Collier County, Florida. He too is a board member of the Hitchcock Foundation. Allegedly, the bylaws of the foundation require one of three specific members of the family to attend board meetings, and Edward's father is the last surviving member of this group. Thus, he must attend board meetings for the foundation to have a quorum. Although the board has met on most occasions since 1943 in Nebraska, it met in Collier County in 1999 and 2002, allegedly to accommodate the needs of this senior member of the board.
In May 2003, Neely called Edward's father in Collier County, Florida, and left a telephone message regarding a pending board meeting of the charitable foundation. Edward happened to be at his father's home in Florida at the time. Later that day, Edward returned the call to Neely's office in Nebraska. In his deposition, Neely claims that the call related to foundation business, but Edward claims that it primarily involved private matters relating to the health of Edward's father. During the call, Neely placed his wireless phone handset near a tape recorder and recorded the conversation without Edward's consent. Later that evening, Neely played a portion of the recording to his wife, a board member of the charitable foundation.
When Edward learned that his cousin had recorded this telephone conversation without his permission, he filed this lawsuit in 2003 in Collier County against Neely claiming the right to receive a civil remedy under section 934.10 of the Act for an illegal recording of a telephone conversation. Edward's only allegation to establish jurisdiction over Neely was that the recording in Nebraska constituted a tortious act within Florida under section 48.193(1)(b). Neely responded by moving to dismiss the lawsuit for lack of personal *249 jurisdiction and filed a supporting affidavit. Edward then filed his own affidavit and deposed Neely on the issue of jurisdiction.
In addition to the facts described above, the discovery process established that Neely lived and worked in Nebraska and had virtually no ties to Florida. At the time of these events, he owned no land or other property in Florida and was not conducting any personal business in Florida. In 2002, the year preceding the recorded telephone call, Neely had made a number of telephone calls from Nebraska attempting to talk to either Edward or his father while they were in Collier County. These calls related to a personal family issue, and Edward "frequently" did not return the calls. The call Neely made to Collier County in May 2003 and Edward's return call were apparently the only calls made that year.
The foundation's two Florida board meetings each lasted less than a day. Neely stayed in Florida for approximately a week on each occasion, engaging in vacation activities when not involved with the foundation. The foundation does not maintain any office or agency in Florida.[1]
In September 2007, the trial court conducted a hearing on the motion to dismiss and denied it. It is clear that our holding in Koch was critical to the trial court's decision and that Edward was relying exclusively on the theory that Neely had committed a tortious act in Florida, authorizing jurisdiction under section 48.193(1)(b). Neely then filed this timely appeal from the nonfinal order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i).

II. THE FACTS IN KOCH

The facts in Koch involved closer ties between the nonresident defendant and the State of Florida. Ms. Koch worked as a salesperson for a company described only as "Progressive." Koch, 710 So.2d at 6. She lived in Georgia, but her sales territory included a portion of Florida. As part of her job, Ms. Koch made five three-day trips to Florida. She also made regular weekly business telephone calls to her supervisor's home in Tampa, Florida. On one such occasion in 1996, Ms. Koch recorded the call from her home in Georgia without her supervisor's permission. Id.
When her supervisor filed suit in Tampa, Ms. Koch moved to dismiss the action for lack of jurisdiction over her person. Although the telephone call was business related and Ms. Koch was working at least part-time in Florida, this court's analysis did not focus on the theory that she was doing business in Florida or that she had caused injury to a person in Florida from a location outside this state while engaged in business solicitation activities. See, e.g., § 48.193(1)(a), (f), Fla. Stat. (1997). Instead, we focused on whether the single, recorded telephone call was sufficient to establish jurisdiction under section 48.193(1)(b) for committing a tortious act within Florida and the minimum contacts required to satisfy constitutional due process. Id. at 6-7.
We concluded that it did. We reasoned that the "interception" of the communication occurred in Florida, explaining:
The key question then becomes where the communication was intercepted. Under the Act, the actual "interception" occurs not where the communication is ultimately heard (here, Georgia), but where the communication originates *250 (Tampa).... We interpret this language to mean that, for purposes of establishing a tort under the Act, the interception occurs where the words or the communication is uttered, not where it is recorded or heard.
Id. at 7 (citations omitted). Having reached this legal conclusion, we decided that "[s]ince the interception of the call occurred in Florida, the injury occurred here. That is enough." Id.
It is this reasoning that we now reject. The cases we relied upon in Koch did not address a jurisdictional issue, but rather involved statutory interpretation of the term "interception." See, e.g., State v. Mozo, 655 So.2d 1115, 1117 (Fla.1995); United States v. Nelson, 837 F.2d 1519, 1527 (11th Cir.1988). The theory that a recording in a distant location is an "interception" inside Florida may be appropriate for some legal purposes, but we conclude it is insufficient, standing alone, to support a claim that a person in a distant state or country committed a tortious act within Florida as required to support long-arm jurisdiction under section 48.193(1)(b).

III. APPLYING THE FLORIDA LONG-ARM STATUTE IN THE CONTEXT OF AN ALLEGED INTERSTATE VIOLATION OF THE FLORIDA SECURITY OF COMMUNICATIONS ACT
Because the issue in this case is closely connected to distinctly different issues, we spend a moment making the distinctions express. We first observe that our scope of review of this nonfinal order is limited to the issue of jurisdiction over the person; we have no authority to decide whether the complaint states a cause of action at this juncture. The Florida Constitution restricts our review of nonfinal orders to those the supreme court permits us by rule to review. See art. V, § 4(b)(1), Fla. Const. Florida Rule of Appellate Procedure 9.130(a)(3)(c)(i) permits us to review nonfinal orders that determine jurisdiction of the person, but there is no rule permitting review of nonfinal orders that determine whether a complaint states a cause of action.
Admittedly, it is sometimes difficult to distinguish between a holding that the trial court had no basis for jurisdiction over the person from a holding that the complaint failed to state a cause of action. See, e.g., 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co., 638 So.2d 149, 151 (Fla. 4th DCA 1994) (explaining that where the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated). Nevertheless, our holding today is limited to the issue of whether the trial court may exercise personal jurisdiction pursuant to section 48.193(1)(b) under the allegations Edward presents. We do not comment as to whether the cause of action as alleged may be maintained in Florida under an alternative basis for long-arm jurisdiction or, for that matter, in Nebraska where Neely resides.
Because we do not address whether the allegations in the complaint state a cause of action, we do not reach the propriety of the extraterritorial application of the Florida Security Communications Act. The Act makes it a crime to intentionally intercept a person's electronic communications, including a telephone call, without prior consent of all parties to the communication, and permits a private cause of action providing for a minimum of $1000 in liquidated damages for an interception in violation of chapter 934. See §§ 934.03, .10, *251 Fla. Stat. (2007).[2] Although the Florida Act requires all parties to consent to the recording of electronic communications, many states and the federal government do not require that all parties to the recording consent. See, e.g., 18 U.S.C. § 2511(2)(c) (2008); see generally Carol M. Bast, What's Bugging You? Inconsistencies and Irrationalities of the Law of Eavesdropping, 47 DePaul L. Rev. 837, 927 (1998) (containing an appendix of multistate consent laws). Thus, Edward and Neely acknowledge that the interception of this telephone conversation was not illegal in either Nebraska where it was actually recorded or under federal law governing interstate communications. While Florida clearly has an interest in protecting the privacy of telephone conversations of Florida residents while they are in Florida, the extraterritorial application of a statute is a separate, complex issue we do not address. See, e.g., Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."); Allen v. Oakbrook Sec. Corp., 763 So.2d 1099 (Fla. 4th DCA 1999) (holding extraterritorial application of Florida security statutes improper); State v. Dudley, 354 S.C. 514, 581 S.E.2d 171, 180 (2003) (holding extraterritorial jurisdiction was a component of subject matter jurisdiction).
Accordingly, we consider only whether this complaint sufficiently alleges a basis for long-arm jurisdiction pursuant to section 49.183(1)(b). We perform a de novo review of a trial court's ruling on a motion to dismiss for lack of personal jurisdiction. See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000). Before a Florida court can exercise personal jurisdiction over a nonresident defendant, a two-stage inquiry is conducted. During the first stage, the court determines whether sufficient jurisdictional facts exist to support the exercise of jurisdiction under Florida's long-arm statute, section 48.193. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989). During the second stage, a constitutional inquiry is conducted to determine whether sufficient minimum contacts exist between the forum state and the defendant to satisfy the due process requirement that a nonresident defendant "should reasonably anticipate being haled into court" in Florida. Id. at 500 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Failure to satisfy either inquiry means the forum state's court does not have the authority to exercise jurisdiction over the defendant.
During the first stage of this inquiry, courts strictly construe jurisdictional statutes. See Cosmopolitan Health Spa, Inc. v. Health Indus., Inc., 362 So.2d 367, 368 (Fla. 4th DCA 1978); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir.1996). If a case can be resolved on statutory grounds, the constitutional inquiry need not be reached. See Silver Rose Entm't, Inc. v. Clay County, 646 So.2d 246, 248 (Fla. 1st DCA 1994) ("In keeping with the rule of decision which forbids reaching constitutional questions when cases can be disposed of on statutory grounds, we turn first to ... [the] statutory claim.").
*252 Section 48.193(1)(b) provides that a person may be subject to the personal jurisdiction of a Florida court for "committing a tortious act within this state." The Florida Supreme Court first applied this statute to permit the exercise of personal jurisdiction over a nonresident defendant who committed a tortious act in Florida in Godfrey v. Neumann, 373 So.2d 920, 922 (Fla. 1979). In Godfrey, however, the tortious act was negligently jumping onto the plaintiff in a swimming pool in Florida. Thus, the nonresident defendant was physically inside the state when he committed the allegedly negligent act. Id.
The reach of subsection (1)(b) has been expanded in more recent cases to include defendants who commit acts outside the State of Florida that have been regarded as tortious acts within the state. See Acquadro v. Bergeron, 851 So.2d 665 (Fla. 2003) (defamation in a telephone call to Florida); Wendt v. Horowitz, 822 So.2d 1252 (Fla.2002) (securities fraud involving telephone calls to Florida investors). These cases have held that Florida courts possess personal jurisdiction over a nonresident defendant where the plaintiff's cause of action arises from communications the defendant directed into Florida. See Acquadro, 851 So.2d at 671; Wendt, 822 So.2d at 1260.
The reasoning of the cases expanding the reach of subsection (1)(b) does not appear to have been used in typical negligence actions, see Homeway Furniture Co. of Mount Airy, Inc. v. Horne, 822 So.2d 533, 537 (Fla. 2d DCA 2002), but has been applied primarily to defamation, slander, fraud, and other intentional torts. See, e.g., Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716 (Fla. 4th DCA 1998) (involving action for defamation); Wood v. Wall, 666 So.2d 984 (Fla. 3d DCA 1996) (involving action for fraud and racketeering); Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994) (involving action for defamation); Allerton v. State, Dep't of Ins., 635 So.2d 36 (Fla. 1st DCA 1994) (involving action for fraud and breach of fiduciary duty); Int'l Harvester Co. v. Mann, 460 So.2d 580 (Fla. 1st DCA 1984) (involving action for breach of fiduciary duty), disapproved of on other grounds, Doe v. Thompson, 620 So.2d 1004 (Fla. 1993). These cases have generally been based upon common law theories and actions that a reasonable person outside the State of Florida would expect to create a cause of action in Florida.
Although a defendant's presence in Florida is not always required to support the exercise of personal jurisdiction, see Wendt, 822 So.2d at 1260, if we construe section 48.193(1)(b) strictly, as we are required to do, we are not convinced that the isolated act of recording a telephone call in another state in violation of a Florida statute is enough to constitute a "tortious act within this state" for purposes of the long-arm statute. We are admittedly influenced by the fact that the act was not illegal in the state where the defendant actually committed it and was not illegal under the federal law that would apply to interstate telephone calls. Under the circumstances, we follow the general rule that the existence of an injury within Florida, standing alone, is insufficient to support jurisdiction over an out-of-state tortfeasor. See Jack Pickard Dodge, Inc. v. Yarbrough, 352 So.2d 130, 134 (Fla. 1st DCA 1977).
The ramifications of the opposite holding should not be overlooked. If the legislature could create a statutory cause of action that deemed an action in another state to have occurred in Florida, and then use that deemed action as the basis to find tortious conduct in Florida justifying jurisdiction over the defendant, then section 48.193(1)(b) would permit practically any *253 regulated act committed anywhere in the world affecting a person in Florida to subject the actor to the jurisdiction of the courts of Florida even if that person had no other contacts with the state. No doubt such a broad application of the statute would be held unconstitutional as applied in many scenarios under Woodson. We have no basis to believe that the legislature intended such an expansive interpretation of section 48.193(1)(b), and we decline to give it that interpretation today. We accordingly recede from our decision in Koch to the extent we held that an extraterritorial violation of the Florida Security of Communications Act was sufficient, standing alone, to support personal jurisdiction over a foreign defendant under section 48.193(1)(b).
Reversed and remanded
NORTHCUTT, C.J., and FULMER, WHATLEY, CASANUEVA, STRINGER, DAVIS, SILBERMAN, KELLY, VILLANTI, WALLACE, LaROSE, and KHOUZAM, JJ., Concur.
NOTES
[1] Thus, it is unlikely that the activities of the foundation would be sufficient to subject Neely to jurisdiction in Florida on the theory that he was operating a business in Florida. See § 48.193(1)(a).
[2] Thus, for Neely to have committed an act that allows for this civil remedy, it would seem to be necessary that Neely's conduct in his office in Nebraska constitute a criminal violation of section 934.03 in Florida.