DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CEDRUS ENTERPRISES HOLDING SAL,

Appellant,

v.

JABIL, INC.,

Appellee.

No. 2D2025-1068

_____

February 4, 2026

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Pinellas County; Thomas M. Ramsberger, Judge.

Ethan A. Arthur and Alyssa M. Reiter of Wicker Smith O'Hara McCoy & Ford, P.A., Tampa, for Appellant.

Gabriela N. Timis of Dentons Cohen & Grigsby P.C., Naples, for Appellee.

LaROSE, Judge.

Cedrus Enterprises Holding SAL appeals the trial court's order denying its motion to dismiss Jabil, Inc.'s complaint for lack of personal jurisdiction. We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(C)(i).

Because Cedrus consented to jurisdiction in Pinellas County circuit court, we affirm.[1]

## **Background**

Jabil is a St. Petersburg-based manufacturing-solutions provider and distributor of end-market electronic assemblies and systems. Cedrus, a Lebanese holding company, owns business investments worldwide.

Networked Energy Services (NES), a global energy corporation, is among Cedrus's holdings. NES was formed as a spinoff from its parent company, Echelon Corporation.

Prior to NES's creation, Echelon and Jabil were parties to a Manufacturing Services Agreement. After the spinoff, Echelon, Jabil, and NES agreed to assign to NES Echelon's rights and obligations under the Manufacturing Services Agreement. Later, Cedrus agreed to guaranty NES's obligations under the Manufacturing Services Agreement.

Unfortunately, NES lagged in paying Jabil. Consequently, NES and Jabil entered a Payment Agreement. That agreement acknowledged the continued enforceability of Cedrus's guaranty: "[NES], Cedrus[,] and Jabil hereby acknowledge and agree that the [guaranty] applies to this [Payment] Agreement and remains enforceable as this [Payment] Agreement memorializes an agreed payment plan based on extended payment conditions for the Undisputed Amount owed under the [Manufacturing Services Agreement]."

Critical to this appeal, the Payment Agreement included a choice of law provision identifying Florida law as controlling and a venue provision providing for personal jurisdiction over any dispute in "the

---

[1] Cedrus's alternative procedural argument lacks merit. We pay it no further heed.

2

Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida":

> In any litigation arising out of or related to the [Manufacturing Services Agreement], this [Payment] Agreement, or any other Transaction Document . . . [NES] irrevocably consents to and confers personal jurisdiction on the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida . . . . [NES] knowingly, willingly, and expressly waives any objections as to personal jurisdiction and venue as to th[at] court[].

Cedrus did not sign the Payment Agreement. Instead, it signed a one-page "Joinder and Consent," simply stating that Cedrus "joins in and consents to the foregoing [Payment Agreement], and hereby ratifies and confirms the [guaranty] and certifies that the same is [in] full force and effect."

Alas, NES continued to miss payments to Jabil. NES racked up an arrearage of over $13,000,000. Cedrus, as guarantor, failed to step up in NES's stead. As a result, Jabil sued Cedrus in Pinellas County circuit court for breach of the Guaranty Agreement. The complaint alleged that Cedrus " 'irrevocably' consented to and conferred personal jurisdiction on this Court and expressly waived any objections as to personal jurisdiction and venue in this Court relating to the enforcement of their obligations to Jabil."

Cedrus moved to dismiss the complaint. It contended that Jabil failed to sufficiently allege that Cedrus was subject to personal jurisdiction under Florida's long-arm statute. Cedrus also claimed that its guaranty provided for venue in Delaware. The trial court rejected Cedrus's argument:

> [B]y virtue of Cedrus entering into a guarantee agreement for the underlying transaction between Jabil and [NES] and also entering specifically a joinder in consent . . . that creates a sufficient contact and/or nexus, if you will, between the

3

business of Jabil with [NES] to allow Cedrus -- the Court to have personal jurisdiction over Cedrus.

## Discussion

We review the trial court's order de novo. *Kountze v. Kountze*, 996 So. 2d 246, 251 (Fla. 2d DCA 2008) (en banc).

> As this court explained in *Kountze*, a Florida court must first determine whether the complaint sufficiently alleges a factual basis under Florida's long-arm statute before it can exercise jurisdiction over a nonresident defendant. Second, the court must determine whether sufficient minimum contacts exist between the forum state and the nonresident defendant to satisfy constitutional due process requirements. "Failure to satisfy either inquiry means the forum state's court does not have the authority to exercise jurisdiction over the defendant."

*Quality Auto., LLC v. Ellis*, 401 So. 3d 578, 580 (Fla. 2d DCA 2025) (citations omitted) (quoting *Kountze*, 996 So. 2d at 251). In assessing minimum contacts, we ask whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *WorldWide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Joinder and Consent is brief yet sweeps broadly. First, it confirmed the continuing validity of Cedrus's guaranty. Second, it recited that Cedrus joined in the Payment Agreement. Being thus bound, Cedrus consented to venue in Pinellas County circuit court.

But that does not end our story. Claiming to lack minimum contacts with Florida, Cedrus seemingly downplays a provision of Florida's long-arm statute:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her

4

personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

. . . .

9. Entering into a contract that complies with s. 685.102.

§ 48.193(1)(a)9, Fla. Stat. (2025); *see also Corp. Creations Enters. LLC v. Brian R. Fons Att'y at L. P.C.*, 225 So. 3d 296, 301 (Fla. 4th DCA 2017) ("[T]he legislature enacted sections 685.101 and 685.102, Florida Statutes, which allow Florida courts to exercise personal jurisdiction in certain circumstances not otherwise provided for under Florida's long-arm statute.").

Section 685.102(1), Florida Statutes (2025), provides that

[n]otwithstanding any law that limits the right of a person to maintain an action or proceeding, any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to s. 685.101 and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.

A contract satisfies section 685.102 if it meets the following requirements:

(1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;

(2) Include a provision whereby the non-resident [sic] agrees to submit to the jurisdiction of the courts of Florida;

(3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;

(4) Not violate the United States Constitution; and

5

(5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

*Corp. Creations Enters. LLC*, 225 So. 3d at 301. Cedrus challenges only requirement (4), based on its purported lack of minimum contacts.

However, Cedrus ignores that "in the commercial context, 'the Supreme Court has held that the minimum contacts standard is met if a forum-selection clause exists that is "freely negotiated" and is not "unreasonable and unjust." ' " *Jetbroadband WV, LLC v. MasTec N. Am., Inc.*, 13 So. 3d 159, 163 (Fla. 3d DCA 2009) (quoting *Steller Grp., Inc. v. Mid-Ohio Mech., Inc.*, 2004 WL 5685570, at *3 (M.D. Fla. Jan. 28, 2004)). We will not deem the venue provision here to be unreasonable or unjust, unless Cedrus shows that the chosen forum is "so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

Cedrus fails this daunting task. By virtue of the Joinder and Consent, Cedrus voluntarily and intentionally made itself a party to the Payment Agreement, including its venue provision. *See Corp. Creations Enters. LLC*, 225 So. 3d at 301 ("When sections 685.101 and 685.102 are satisfied, personal jurisdiction may be exercised and the courts may dispense with the more traditional minimum contacts analysis."); *see also Gibney v. Pillifant*, 32 So. 3d 784, 785 (Fla. 2d DCA 2010) ("[T]he actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995))).

Lastly, Cedrus tells us that its guaranty's nonexclusive Delaware forum selection clause applies. But we must read interrelated writings

together and give effect to the later forum clause. *See, e.g.*, *Bach v. Vladigor Invs., Inc.*, 325 So. 3d 41, 44-45 (Fla. 4th DCA 2021) (enforcing Florida forum clause in agreement notwithstanding contrary provisions elsewhere).

## Conclusion

We affirm the trial court's order denying Cedrus's motion to dismiss the complaint for lack of personal jurisdiction.

Affirmed.

KELLY and MORRIS, JJ., Concur.

_____

Opinion subject to revision prior to official publication.